May Term,
1860.

BAKER
v.
ROBERTS.

determined, a judgment will not be reversed, although error may have intervened." *Rockhill* v. *Spraggs*, 9 Ind. R. 30.  See, also, 3 Ind. R. 385, 430, as to the presumption arising when the party appealing fails to set out the evidence.

---

BAKER *v.* ROBERTS.

The law authorizing judgment and execution without relief from valuation laws, where such relief is waived in the contract, is valid as to promissory notes and bills of exchange.  *Quære*, whether upon other instruments containing such waiver, judgment can be rendered accordingly.

Where a party gets all the consideration he voluntarily and knowingly contracts for, he will not be allowed to say that he got no consideration.

The mother of a bastard may settle and dismiss a bastardy suit brought on her relation.

A wife may be bound by the acts of her husband in reference to her separate property, where such acts are done by her authority and approved by her.

*Thursday,*
*June 14.*

APPEAL from the *Marion* Circuit Court.

*Per Curiam.*—Suit by *Jeremiah*, assignee of *Joseph T. Roberts*, upon a promissory note of the following tenor:

" One day after date, we, or either of us, promise to pay *Joseph T. Roberts*, or bearer, the sum of 200 dollars, for value received, without relief from valuation laws, and with interest.                    *Thomas Baker,*

" *September* 9, 1858.                    *Jacob Lawson.*"

The Court rendered judgment for the plaintiff without relief, &c.

In this it is said the Court erred, because the section of law authorizing such judgment is unconstitutional, not being properly included under the title of the act.

There may be force in this position so far as it is applicable to instruments other than bills and notes; but as to them, legislation under the title of the act is valid.  *Mewherter* v. *Price*, 11 Ind. R. 199.  Probably a provision in another part of the code renders such judgments valid upon all instruments stipulating for it, but this point we leave open.

Fraud and want of consideration were also urged against the validity of the note. The cause was tried by the Court without a jury, and thus the questions of law and fact were decided by the same tribunal. We must presume the decision correct, unless the contrary appears, both upon points of law and questions of fact.

No fraud appears to have been proved, and the party appears to have received all the consideration he required as the inducement to the note. In *Hardesty* v. *Smith*, 3 Ind. R. 39, it is said that where a party gets all the consideration he voluntarily and knowingly contracts for, he will not be allowed to say he gets no consideration. The same doctrine is asserted in *Major* v. *Brush*, 7 Ind. R. 232. See Walk. Am. Law (3d ed.), p. 405, note *c*.

The mother of a bastard child may settle and dismiss a bastardy suit brought on her relation. Perk. Pr., 579.

A wife may be bound by the acts of her husband in reference to her separate property, where they are performed by her authority and approved by her.

The judgment is affirmed with 5 per cent. damages and costs.

*N. B. Taylor* and *W. Wallace*, for the appellant (1).

---

(1) Counsel for the appellant, after reciting the pleadings and evidence, made the following argument:

We rely for the reversal of the judgment of the Court below, on the following points:

I. There was no consideration for the said note in this—

*First.* Sections 14 and 15, 2 R. S. p. 488, provide that if the jury find that the defendant is the father of such [bastard] child, or the defendant in Court confesses the same, he shall be adjudged the father of the child, and stand charged with the maintenance and education thereof; and the Court shall, on such verdict and judgment, make such order as may seem just, for the securing such maintenance and education to such child, by the annual payment to such mother, or if she be dead, or an improper person to receive the same, to such other person as the Court may direct," &c.

Hence it follows that the money ordered to be paid by the Court, in such cases, is for the maintenance and education of the child, and the mother, or whoever else the Court appoints to receive such money, is merely a trustee to collect and receive it, for the use declared by the statute. The judgment, or provision made by the Court, is the fund, and the trustee cannot divert or destroy the fund; a sale, or attempted sale and transfer, of the fund is therefore void.

The judgment or order, in such case, is clearly under the control of the Court; and upon proper application made to the Court, and good cause shown, the person appointed by the Court, to receive the money, may, at any time, be removed, and some other suitable person appointed in the stead.

And suppose the child should die? After its death the defendant would not be liable to pay anything; for the money is for the maintenance and education of the child. This seems so plain, as not to require argument or authority.

The assignment of the mother, then, would have amounted to nothing, much less can the assignment of *Hiram Rhoads* be of any effect, even if done with her knowledge and consent.

*Second. Lawson* testifies that the consideration of the note was the procuring of *Hiram Rhoads* to assign the judgment against *Ayres* to witness and defendant *Baker;* that *Joseph T. Roberts* said to him, witness, that he could get *Hiram Rhoads* to assign the judgment to witness and *Baker,* if they would give him (*Roberts*) their note for 200 dollars, and a note to *Rhoads* for the same amount (pretty good bonus where neither *Roberts* nor *Rhoads* had any right); that he (*Lawson*) went to defendant, *Baker,* and they went to him (*Roberts*) and made the note sued on in consideration he would procure *Rhoads* to assign the judgment; that *Roberts* had no difficulty and but little trouble in procuring the assignment; that *Rhoads* was willing to make the assignment; that they (witness and defendant, *Baker*) also gave their note to *Rhoads* for 200 dollars more.

Does this evidence show a sufficient consideration to support the note? It surely cannot be that it does. There was no benefit to the promisors, for the assignment, as we have shown, was void; and if it had not been void, it placed the sureties (*Baker* and *Lawson*) in no better position than they were before it was made. Besides, *Joseph T. Roberts* sustained no loss or inconvenience, nor did he subject himself to any charge or obligation at the instance of the defendant *Baker,* or even *Lawson.*

CHITTY, in his work on Contracts, says: "The main rule in regard to the sufficiency of the consideration seems to be that it may arise either, first, by reason of a benefit resulting to the party promising, or at his request, to a third person, by the act of the promisee; secondly, on occasion of the latter sustaining any loss or inconvenience, or subjecting himself to any charge or obligation, at the instance of the person making the promise, although such person obtain no advantage therefrom."

BROOM, in his Commentaries on the Common Law, top p. 248, says: "To constitute a contract valid in law, there must have been a request to the contractee by the contractor. This request, however, need not, in all cases, have been express; it will very often be implied by law."

But if it appears affirmatively that there was no request by the contractor to the contractee, it necessarily follows that none can be implied.

Now it is manifest that the assignment by *Rhoads* was invalid. But did *Roberts* sustain any loss or inconvenience, or subject himself to any charge or obligation, by what he did? It seems not. What he did was not difficult, and he had but little trouble. *Rhoads* was willing to make the assignment. The conclusion must therefore be that *Roberts* had no difficulty or trouble at all, and subjected himself to no charge or obligation; for the charge or obligation contemplated by law must be real, and where it appears affirmatively that none in reality existed, no room for implication exists.

If, however, *Joseph T. Roberts* sustained any loss or inconvenience, or sub-
jected himself to any charge or obligation, was it done at the request of the
defendant *Baker*, or even *Lawson?* It was not. *Lawson's* evidence is conclu-
sive. "*Joseph T. Roberts* said to him," (*Lawson*) "that he could get *Hiram*
*Rhoads* to assign the judgment," &c.

What *Joseph T. Roberts* did was done at his own instance and request, not
at the instance and request of the promisors. *Joseph T. Roberts* knew that
*Rhoads* was willing to make the assignment, and therefore went and proposed
it; or he and *Rhoads* concocted the matter, and he then went to *Lawson* and
proposed it for the purpose of defrauding the sureties. This conclusion is
irresistible.

But grant, for the sake of the argument, that *Joseph T. Roberts* sustained
some loss or inconvenience, or incurred some charge or obligation at the in-
stance of the promisors, does not this rule apply? "So in respect to the ex-
tent of trouble, loss, or obligation, which the promisee has taken upon himself,
at the promisee's request, we shall observe, upon considering the cases referred
to, that it is immaterial that the detriment or charge thus assumed, is, in fact,
of the most trifling description, provided it be not utterly worthless in fact and
in law." Chit. on Cont., p. 32.—Story on Cont., p. 485, § 431.

Now the assignment, as we have shown, was not only worthless in fact and
in law, after it was made; but if it had not been, the services rendered in get-
ting the assignment were utterly worthless in fact and in law, for it placed the
promisors, the sureties or bail of *Ayres*, in no better position than they were
before, nor gave them any greater advantage than they had before it was done.
This ought to settle the question. But the services were not only worthless in
fact and in law—they were rendered at the instance of *Joseph T. Roberts* him-
self—done upon his own proposition, the proposition of an attorney too, which
of itself alone (if it be not a rule of law in these latter days, that all honor
and virtue in, and regard for, the profession is lost, and that every man is
bound to be on his guard against a lawyer,) ought to be a guaranty of worth
and benefit; if, therefore, the assignment were of any force in law (which it is
not,) and a slight benefit might be imagined to accrue to the promisors, or a
slight damage or inconvenience be suffered by the promisee (which could only
be by a heavy tax of that quality of the mind—imagination,) *Joseph T. Roberts*
ought to be regarded as a volunteer, and entitled to nothing, no odds how
much trouble he may have had.

II. But suppose the benefit to the promisor, or the inconvenience or damage
to the promisee, in this case, might be, in the language of·STORY, "susceptible
of any legal estimation," does not this rule apply? "Where, however, the in-
adequacy of consideration is so gross as to create a presumption of fraud and
overreaching, or of unconscientious advantage taken under circumstances of
distress or improvidence on one side, or of mental incompetency on the other,
the contract founded thereon cannot be enforced at law or in equity." Story
on Cont., p. 437, § 432.

Is it possible to conceive a case where the facts bring it so fully and clearly
within every branch of the foregoing rule? In the whole history of jurispru-
dence a stronger case cannot be found. It does not need to recapitulate the
facts. They are fresh in our memory, and fresh in the memory of the Court
yet. The case occupies the very verge of the precipice, ready to topple over—
the thickness of a hair would make it a downright felony.

III. *Joseph T. Roberts* was the attorney of *Matilda Quackenbush*, alias *Matilda Rhoads*, and represented, or ought to have represented, the interests of the bastard child. He was an attorney; and everything in the transaction shows that a confidence—yea, a blind confidence—was placed in him by the defendant *Baker*, as well as by *Lawson*. It was his duty, therefore, to inform them what, and whether any, benefit would accrue to them from the proposed assignment; and as soon as the defendant *Baker* proved in what attitude *Roberts* stood, that the consideration of the note was the procuring the assignment of the said judgment by *Rhoads*, that 'it was upon *Roberts'* instance; and the relation of *Roberts* to the bastard child, the *cestui que trust* in the judgment against *Ayres*, the burden of proof was thrown on him, or his assignee, the plaintiff, to show the perfect fairness, adequacy, and equity of the transaction. 1 Story's Eq. Juris., §§ 310, 311.—5 Blackf. 509.

Mr. *Taylor* afterwards submitted the following argument upon the point that the law authorizing judgment and execution without relief, &c., is not valid:

I insist that the law is void:

*First.* Because the only statute giving such authority is § 15, of the act entitled "An act concerning promissory notes and bills of exchange," 1 R. S. p. 379. This section is in these words: "Upon any instrument of writing, made in this state or elsewhere, containing a promise to pay money without relief from valuation laws, judgment shall be rendered and execution had accordingly." The first section of this act (1 R. S. p. 378) declares "that all promissory notes, bills of exchange, bonds, or other instruments of writing, signed by any person, who promises to pay money, or acknowledges money to be due, or for the delivery of a specific article, or to convey property, or to perform any stipulation therein mentioned, shall be negotiable by indorsement thereon, so as to vest the property thereof in each indorsee successively."

In the case of *Mewherter* v. *Price*, 11 Ind. R. 199, so much of the above act as refers to other instruments of writing than promissory notes and bills of exchange, is decided to be void, because it is not embraced in the title of the act. This decision completely eviscerates the first section of the act, and makes it read thus: "Be it enacted by the General Assembly of the state of *Indiana:* That all promissory notes [and] bills of exchange, shall be negotiable by indorsement thereon, so as to vest the property thereof in each indorsee successively." Or thus: "Be it enacted, &c.,.That all promissory notes [and] bills of exchange, signed by any person who promises to pay money, shall be negotiable by indorsement thereon, so as to vest the property thereof in each indorsee successively."

In the first example I have omitted the clause in the section, "signed by any person who promises to pay money," and inserted it in the latter. But this clause must necessarily be stricken out; for a promissory note is a written promise, and a bill of exchange a written order or request for the payment of money absolutely and at all events. Baily on Bills, p. 1.—Chit. on Bills, pp. 1, 516.—Story on Notes, p. 1, § 1.—Story on Bills, p. 4, § 3. And the clause "signed by any person who promises to pay money," cannot be accurately used as to a bill of exchange, and would embrace a promise to pay money on a contingency, as also bonds and other instruments having none of the qualities of a promissory note.

The terms "promissory note" and "bill of exchange," have a well under-

stood and settled legal meaning or signification, and there is nothing in the subject of the act as expressed in the title, nor in the body of the act, which contemplates a change in that established definition. If, then, the Court adhere to the decision in *Mewherter* v. *Price*, § 15 of the act concerning promissory notes and bills of exchange is clearly void; for that section declares, as we have seen, that "upon any instrument of writing, made in this state or elsewhere, containing a promise to pay money without relief from valuation laws, judgment shall be rendered, and execution had accordingly;" and the rule is well settled, that if the part of the statute which is void, is so connected with other portions, which might otherwise be valid, that the two cannot be separated, the whole enactment is void. 2 Blackf. 8.—4 Ind. R. 342.—6 How. Miss. R. 625.

In the case of *Mewherter* v. *Price*, 11 Ind. R. 201, the Court say: "We have seen that the title to the act under consideration, is limited to promissory notes and bills of exchange. Its language is very explicit, and we know of no rule of construction by which it can be so extended as to embrace instruments of writing other than those which it expressly names." The Court, therefore, under the above rule, sustained the act as to promissory notes and bills of exchange, and as to all other instruments of writing, declared it void. Why? Because, in the first section of the act, promissory notes and bills of exchange, being specifically named, separate from all other instruments in writing, the valid could be separated from the void—the tares could be separated from the wheat.

But suppose the first section of the act had been couched in this language: "Be it enacted by the General Assembly of the state of *Indiana*, That all instruments in writing, signed by any person who promises to do or perform any act or stipulation therein mentioned, shall be negotiable by indorsement thereon, so as to vest the property thereof in each indorsee successively," could the Court have held any part of it valid? Clearly not; because the valid part, if it had any such, would not constitute a complete and operative act within itself. *Clark* v. *Ellis*, 2 Blackf. 8.—*Maize* v. *The State*, 4 Ind. R. 342. The connection would have been such that no separation could be made, and the whole would have been void. 6 How. Miss. R. 625.

Now § 15 of the act is couched in this general and inseparable language, "upon any instrument of writing, made within this state or elsewhere, containing a promise to pay money without relief from valuation laws, judgment shall be rendered, and execution had accordingly." This language, it is true, would include promissory notes and bills of exchange, which have been decided to be embraced in the title of the act; but it also includes bonds, mortgages, leases, building agreements, and written contracts of every kind, which, along with other stipulations, contain a promise to pay money, and none of these are particularized. How, then, can the Court make a separation? Can any division be made? Can the Court declare part of that section void, and leave any part which will be complete and operative within itself? Clearly not. It is as if the tares had grown, and were imbedded in the grains of the wheat, and to get at the tares and destroy them, you must also crush and destroy the grains of wheat.

*Second.* Because no authority to render judgments without any relief from appraisement laws, and have execution accordingly, can be derived from the mere promise to pay without any relief from appraisement laws. This, by

analogy, is conclusively decided in the case of *Develin* v. *Wood*, 2 Ind. R. 103. See 7 Wis. R. 582.

*Third.* Because no authority to render judgments without any relief from appraisement laws, on promissory notes which contain a promise, and bills of exchange which contain a request to pay money without any relief from appraisement laws, can be derived from the practice act; and if it could, there is no authority in the practice act to issue an execution thereon, and enforce its collection without any relief from appraisement laws. This is easily demonstrated. Section 381, 2 R. S. p. 123, provides that "when a judgment is to be executed without any relief from appraisement laws, it shall be so ordered in the judgment. When a plaintiff·has included in one action, demands subject to the appraisement laws, with demands made payable without relief from appraisement laws, the Court may render separate judgments upon such demands."

There are two provisions in this section, and I will examine them separately.

1. "When a judgment is to be executed without any relief from appraisement laws, it shall be so ordered in the judgment."

It is important, then, to inquire when, or in what cases, it is provided that a judgment shall be executed without any relief from appraisement laws. The following are the cases mentioned in the statute :

1st. Upon any instrument of writing, made in this state or elsewhere, containing a promise to pay money without relief from valuation laws. 1 R. S. p. 379, § 15.

2d. Property conveyed by a debtor with intent to hinder, delay, or defraud creditors. 2 R. S. p. 138, § 456.

3d. Judgments on bonds of executors, administrators, and guardians, as to the property of the principal. 2 R. S. pp. 287, 328, §§ 164, 26.

4th. Judgments in prosecutions for bastardy. 2 R. S. p. 489, § 16.

This clause of § 381 of the practice act, does not, then, authorize or declare that a judgment shall be rendered without any relief from appraisement laws, nor in what cases it shall be so rendered. It simply declares that' when a judgment is to be executed without any relief from appraisement laws, it shall be so ordered in the judgment; and to ascertain when, we must resort to the statutory provisions above cited.

2. "When a plaintiff has included in one action, demands subject to the appraisement laws, with demands made payable without any relief from appraisement laws, the Court may render separate judgments upon such demands."

This portion of the section is merely directory, but the former is positive. In the one case "it shall be so ordered in the judgment;" in the other, "the Court may render separate judgments upon such demands." But this is not important. What demands are subject to the appraisement laws? Clearly, such demands as by the law are not exempted from the appraisement laws; for we have seen that the mere agreement of a promisor, in the absence of a statute, will not have that effect.

Now a statute which conflicts with the constitution, is not a law; it is worthless and void. If, then, there be no statute declaring promissory notes made payable without any relief from appraisement laws, exempt from the appraisement laws, they are subject to the appraisement laws, although they contain

the promise to pay without any such relief. The cases, then, not subject to appraisement laws, are those which some valid statute exempt from the benefit of such laws; and to discover these, we must refer to the statutes. But this we have already done; and by so doing, have clearly ascertained that § 15 of the act concerning promissory notes and bills of exchange is void.

Now, it is apparent from this section,

1st. That a judgment cannot be executed without any relief from the appraisement laws, unless it is so ordered in the judgment.

2d. That all demands are subject to the appraisement laws, unless there is a valid law exempting them, or some of them, from the benefit of such laws, whatever be their substance or form.

3d. That to determine when a judgment is to be executed without any relief from appraisement laws, the statutes must be resorted to; and if, in any case, the statute professing to give such authority is void, judgment cannot be so rendered, or if it is, that part of the judgment is void.

4th. That neither portion of § 381 of the practice act declares in what cases a judgment shall be executed without any relief from appraisement laws, for the first branch of the section presupposes certain laws on the subject, declaring the cases in which a judgment is to be executed without any relief from appraisement laws, and the second, which is merely directory, that in a certain contingency, the Court may render separate judgments.

But suppose the Court does not, in the case declared, render separate judgments, but should render the usual judgment, subject to the appraisement laws, could the defendant sustain a writ of error, or could the plaintiff sustain such writ, unless there was a valid law exempting one of the claims sued on in the action, from the benefit of the appraisement laws, and the Court should refuse to so render a judgment thereon? Clearly not. If, however, a plaintiff, in such a case, had omitted to take a separate judgment waiving any relief from the appraisement laws, in a case authorized by the law, the omission might be corrected on notice and motion in the Court where it was rendered (2 R. S. p. 48, § 99), but in no other way; for it is clear that a plaintiff could not complain of his own neglect in a Court of error, or if he did, that his complaint would not be heeded.

But again, observe the language of this part of § 381: "When a plaintiff has included in one action, demands subject to the appraisement laws, with demands made payable without any relief from appraisement laws, the Court may render separate judgments upon such demands."

"Demands subject to the appraisement laws," is the general rule, and demands not subject to the appraisement laws, is the exception under our law. The former is the superior and overruling, the latter the inferior and exceptional, and cannot be, unless provided by law. 2 R. S. p. 137, § 445.

I say "superior and overruling," because it is superior to, and overrules the agreement of, the parties, except in the cases provided for by the law (see 2 Ind. R. 102, already cited), and exceptions are odious and must be confined to the cases specified. What, then, is the case specified? It is where a plaintiff has included in one action, demands subject to the appraisement laws, with demands made payable without any relief from appraisement laws. There is no provision made for a case where a plaintiff brings an action on a single demand made payable without any relief from appraisement laws. But suppose the Court has power from this portion of the section alone, to render sep-

arate judgments, the one subject to appraisement, and the other without any relief from appraisement, it does not declare that the latter judgment shall be executed without any relief from appraisement, nor does the former portion of the former section so declare, but leaves that to be determined by other statutes; and it by no means follows that, because a judgment is rendered without any relief from appraisement laws, it is lawful to execute it without any relief from such laws; and besides, 2 R. S. p. 137, § 445, positively declares that "no property shall be sold on any execution, or order of sale issued out of any Court, for less than two-thirds of the appraised cash value thereof, exclusive of liens and incumbrances, [except where otherwise provided by law." There must, then, be a specified case or cases, provided by the law, wherein such sales shall be made; and such provision must be valid.

But the case specified is single, being exclusively confined to the one instance in which the two kinds of demands are included in the same action, and the declaration in that single case is, "that the Court may render separate judgments upon such demands," without stating how these separate judgments shall be rendered; and if an inference as to how, could be deduced from it, in the particular case mentioned, there is no enunciation in the entire section, that in that single case of the inclusion of the two sorts of demands in the same action, the judgment shall be executed without any relief from appraisement laws, or in what cases judgment shall be so executed.

But is there anything in the practice act, prescribing the kinds of execution and their requisites, that will explain, aid, assist, or control this hiatus?

The practice act provides that there shall be three kinds of execution—one against the property of the judgment debtor; one against his person; and one for the delivery of the possession of real or personal property, or such delivery with damages for withholding the same. 2 R. S. p. 130, § 408. It also provides, that the execution must issue in the name of the state, and be directed to the sheriff of the county, sealed with the seal, and attested by the clerk of the Court. It must intelligibly refer to the judgment, stating the Court where, and the time when rendered, the names of the parties, the amount, if it be for money, and the amount actually due thereon, and shall require the sheriff substantially as follows:

*First.* If it be against the property of the judgment-debtor, it shall require the sheriff to satisfy the judgment out of the property of the debtor, subject to execution.

*Second.* If it be against real or personal property in the hands of personal representatives, heirs, devisees, legatees, tenants of real property, or trustees, it shall require the sheriff to satisfy the judgment out of such property.

*Third.* If it be against the body of the judgment-debtor, it shall require the sheriff to arrest such debtor and commit him to the jail of the county, until he shall pay the judgment, or be discharged according to law.

*Fourth.* If it be for the delivery of the possession of real or personal property, it shall require the sheriff to deliver the possession of the same, particularly describing it, to the party entitled thereto; and may at the same time require the sheriff to satisfy any costs, damages, or rents and profits, recovered by the same judgment, out of the property against whom it was rendered, subject to execution, and the value of the property for which the judgment was recovered, to be specified therein, if a delivery thereof cannot be had, and shall, in that respect, be deemed an execution against property. 2 R. S. p. 130,

§ 411. This is all; and there is nothing in it prescribing that an execution shall issue, in any case, commanding the collection of a judgment without any relief from the appraisement laws.

This, then, affords no explanation, aid, or assistance, in any particular. How, then, does the case stand? Why, we are necessarily, and without recourse, driven to § 15 of the act concerning promissory notes and bills of exchange, for the authority to render judgments without any relief from appraisement laws, and to have execution thereon accordingly, upon any such note containing a promise, and upon any such bill containing a request to pay money without relief from appraisement laws; and by this alone must we stand or fall. But this provision has been clearly and conclusively shown to be void, if the decision in *Mewherter* v. *Price* is correct, and is adhered to; and no one has yet, or ever will, presume to question the correctness of that decision. There is, therefore, no law authorizing such a judgment, and such an execution on promissory notes, bills of exchange, or other instruments of writing containing a promise to pay money, without any relief from appraisement laws; for the other provisions of the statute, as we have seen, do not refer to the form of the instruments, as in the case of judgments on the bonds of executors, administrators, and guardians (2 R. S. p. 387, § 164; *id.* p. 328, § 26), and in the other two cases there is no writing whatever. *Id.* p. 138, § 456.—*Id.* p. 489, § 16.

But again, suppose the Court could render a judgment without any relief from the appraisement laws, in actions on demands made payable without any relief from appraisement laws, how could execution be had on them without such relief, without the aid of § 15? It could not be so had in any event; for we have seen that the practice act makes no provision for an execution of that kind. It provides for but three kinds of execution, and not a word is said about an execution without any relief from appraisement laws. See §§ 408, 411.

I have been unable to find any case wherein the objection here made has been presented for the consideration of the Court. It certainly was not raised in the case of *Reilly* v. *Ellsworth*, 11 Ind. R. 222. And if the Court, in the opinion in that case, state correctly the point made by the appellant, he yielded the objection made by him in its very enunciation. The Court say: "By the agreement of the defendant, judgment was rendered in favor of plaintiff for 128 dollars and 33 cents, and that the mortgage be foreclosed. The judgment was rendered waiving appraisement laws, in accordance with the note. The appellant claims that the statute authorizing judgments to be thus rendered, is unconstitutional and void. See 2 R. S. p. 123, § 381. The reason assigned is, that the subject of the act, in this respect, is not sufficiently expressed in the title.

"The title is 'an act to revise, simplify, and abridge the rules, practice, pleadings,' &c., 'in the Courts of this State,' &c. The term 'practice' extends and applies to the manner of rendering judgments, as well as to any other step in an action. There is evidently nothing in the objection." Here the appellant admitted that § 381 authorized judgments waiving relief from appraisement laws, but insisted on its being void, because the subject of the act, in this respect, is not sufficiently embraced in the title, while I insist that § 381 does not give any such authority, or if it does, it is only in one single case, where a plaintiff has included in one action, demands subject to the appraisement laws,

BAKER
v.
ROBERTS.

with those made payable without any relief from appraisement laws, and in that case by implication only; and moreover, that if such a judgment is rendered, there is no authority to execute it without appraisement, unless there is a statute declaring that it shall be so executed; and that §§ 408, 411 of the practice act, relating to executions, make no provision for an execution without any relief from appraisement laws; and that § 15 of the act concerning promissory notes and bills of exchange, which alone makes such provision, is void.

But if the subject of § 381, of the practice act, is sufficiently embraced in the title, is it not, I respectfully submit, opposed to the very spirit and object of the act as expressed in the title?

The title is "an act to revise, simplify, and abridge the rules, practice, pleadings, and forms, in civil cases, in the Courts of this state; to abolish distinct forms of action at law; and to provide for the administration of justice in a uniform mode of pleading and practice, without distinction between law and equity." 2 R. S. p. 27.

This title is a very fair specimen of legislative accuracy and acumen. Our constitution requires the use of a rifle, which carries a single ball right to the centre of the object, but in nine cases out of ten our legislators use a shot-gun of the largest bore, and the result is, they rarely, if ever, strike the subject, but plant their shot all around and hem it in.

It might be said with much plausibility, that the subject of the practice act is the revising, simplifying, and abridging the rules, practice, pleadings, and forms in civil cases—the object or wherefore of the act, to abolish distinct forms of action at law, and to provide for the administration of justice in a uniform mode of pleading and practice, in which there is to be no distinction between law and equity. But the whole might be couched in these words, and express the subject as well: An act to provide a uniform mode of pleading and practice in civil cases in the Courts of this state.

Now the term "practice" extends and applies to the manner of rendering judgment, as well as to any other step in an action. 11 Ind. R. 222. And according to the title of the act, the mode of pleading and practice is to be uniform.

But if the term "practice" extends and applies to the manner of rendering judgment, as well as to any other step in an action, must not the manner of rendering judgment be uniform? And must not the manner of executing judgment be uniform? And if it must be uniform, does it admit of any variation? Clearly not; for that which is to be uniform admits of no variety. By this I mean, that all judgments for damages alone, and all for the recovery of property, real or personal, and damages, or rents and profits, must be rendered in the same manner, and executed in the same manner. And this seems to have been the sense of the legislature in §§ 408 and 411 of the practice act. You cannot, in an act where the title declares the subject to be to provide a uniform mode of pleading and practice, provide that in one class of cases judgment shall be rendered and executed with appraisement, and in another class without appraisement; for that is to make variety instead of uniformity. And this may, in some measure, account for the failure of the legislature to provide in the practice act for an execution without any relief from the appraisement laws, and for declaring generally, when a judgment is to be executed without any relief from appraisement laws, it shall be so ordered, without declaring in what cases a judgment should be so executed, except impliedly, in the solitary case

in § 456, that property conveyed by a debtor with intent to hinder, delay, or defraud creditors, shall be sold without appraisement; and, also, for declaring "when a plaintiff has included in one action demands subject to the appraisement laws, with demands made payable without any relief from appraisement laws, the Court may render separate judgments upon such demands," without telling us how such separate judgments might be rendered, and why, or what demands were or should be subject to appraisement, and what demands were not or should not be, or what sort of judgment might be rendered in an action on a single demand made payable without any relief from appraisement laws; or that a judgment on a demand made payable without any relief from appraisement laws, or a judgment without any such relief should be so executed. What is there then to sustain the practice? Nothing but the fact of its having existed by sufferance since the taking effect of the statutes of 1852; for that it is vicious and void there cannot be a doubt.

And the question not having been presented for the decision of this Court, it was unnecessary for the Court to anticipate. Indeed, this Court only decides the points made in the particular case.

It cannot be expected that this or any other Court will, of its own volition, raise questions and pass upon them. If, therefore, a vicious practice is submitted to by the people, or if a statute which is void is acted upon, and suffered to be enforced, without their questioning its validity, it is their fault and not that of the Court. Courts only enforce or protect legal rights when appealed to, and in the particular in which redress or protection is sought, or it is complained that legal right is infringed.

If, then, a practice which is vicious, or a statute which is void, be submitted to and acquiesced in for a time, is it any the less the duty of the Court, because of that temporary submission and acquiescence, to declare such practice or statute void, when the question is properly presented for the decision of the Court? It cannot be. It is the duty of the Court to decide the law, and not to weigh expediencies or to look at consequences; for the moment the latter is done, the Court becomes a legislative instead of a judicial tribunal.

It is true that in questions of doubt Courts do often consider effects; but where there is and can be no doubt, as there cannot be in this case, of the invalidity of the law and practice in question, there is no room for such considerations. And even in questions of doubt, the practice can scarcely be justified, especially in the decision of constitutional questions; for the well established rule of this Court as to such questions is, that if the constitutionality of a statute is questioned, and there is any doubt as to its unconstitutionality, it will be sustained. 4 Ind. R. 442.—7 id. 326, 332.

This question should be decided on the same principle and in the same manner as if it had been made, and come up before this Court for decision, the very day on which the statutes took effect, as a naked question of law, unbiassed by any of those considerations of expediency or effects, which influence the mind and acts of the legislator. I trust the Court will not consider this allusion to rules so plain, obvious, and elementary, as improper, or made with the least intention or desire to dictate; for it has been prompted by no such feeling.

Is the objection here made to the law purporting to authorize the rendition of judgments, and their execution without any relief from appraisement laws, on promissory notes and other instruments of writing, made payable without