Filed May 26, 1885.

No. 12,276.

## The Vigo Agricultural Society v. Brumfiel.

Bailment.—*Agricultural Society.*—*Liability of to Exhibitors.*—An agricultural society that invites persons to place property on exhibition at one of its fairs, and promises to take care of articles placed in its charge by exhibitors, is a bailee for hire, and it is responsible for a loss of the property if caused by its negligence in failing to perform the duty created by its promise.

Same.—*Contract.*—*Consideration.*—Where parties agree upon a consideration of an indeterminate value, the courts will not disturb the contract.

The Vigo Agricultural Society *v.* Brumfiel.

upon the ground of inadequacy of consideration, and the act of an exhibitor, in placing his property in charge of an agricultural society in answer to its published invitation and promise to take care of the property, constitutes such a consideration.

DEMURRER TO EVIDENCE.—A demurrer to evidence admits all the facts which the evidence tends to prove, and all reasonable inferences therefrom; and the court can not in such case weigh the evidence, nor can it consider evidence favorable to the party demurring if there is a conflict.

CONTRACT.—*Publication of Offer.—Acceptance.*—Where there is a publication of an offer, the contract is complete when it is accepted, provided the acceptance takes place prior to the withdrawal of the offer.

From the Vigo Superior Court.

*S. C. Davis* and *S. B. Davis,* for appellant.

*I. N. Pierce, T. W. Harper* and *B. E. Rhoads,* for appellee.

ELLIOTT, J.—Gathered into a condensed form, the material averments of the appellee's complaint are these: The Vigo Agricultural Society is an association organized under the laws of the State for the purpose of conducting fairs for the exhibition of agricultural products, manufactured articles, and other things; prior to September, 1883, the society issued advertisements inviting persons to place articles on exhibition at a fair to be held in that month. The society agreed to take care of articles placed on its ground by exhibitors, the appellee, in response to the invitation of the society, did put a gun of which he was the owner on exhibition in the place appropriated to that purpose, and, while the gun "was in the care and keeping of the society," it negligently and carelessly suffered it to be stolen, without any fault on the part of the appellee.

The question presented by the demurrer to the complaint is not as to the general duties and liabilities of an agricultural association, but the question is as to the law upon the facts pleaded. The case made by the complaint is one of bailment. The bailment was not a gratuitous one, for the reason that the exhibition of the gun, in response to the invitation contained in the advertisement of the appellant, constituted a

consideration for the undertaking. It may be true that both parties derived a benefit, but this did not strip the contract of its character, that of a bailment for reward. The reward was not, it is true, in money, but it was nevertheless a reward in the form of an act performed at the request of the bailee. An association which invites persons to supply articles to enable it to conduct an exhibition receives some consideration from the person who responds to its invitation by placing articles in its care for exhibition.

Where a consideration of an indeterminate value is agreed upon by the parties, the courts will not undertake to determine its adequacy, but will respect the judgment of the parties and enforce their contract. *Wolford* v. *Powers,* 85 Ind. 294; S. C., 44 Am. R. 16; *Williamson* v. *Hitner,* 79 Ind. 233; *Neidefer* v. *Chastain,* 71 Ind. 363; S. C., 36 Am. R. 198; *Smock* v. *Pierson,* 68 Ind. 405; S. C., 34 Am. R. 269; *Baker* v. *Roberts,* 14 Ind. 552; *Hardesty* v. *Smith,* 3 Ind. 39. The complaint avers that there was an agreement to take care of the gun, and the facts stated show a sufficient consideration for the agreement, and, as the contract was one of bailment for hire, the bailee is responsible for the loss resulting from its negligence. The agreement bound the society, and if its negligence caused the loss it must respond. What the rule would be where there was no promise to bestow care upon the articles exhibited, we need not decide, for here there was, as the complaint avers and the demurrer admits, a promise which created a bailment.

The appellant demurred to the evidence, and it is necessary, before entering upon the discussion of the main question, to ascertain and state the rules which must guide us in considering the evidence. These principles are well settled :

*First.* The demurrer admits all the facts proved, admits the existence of all the facts which there is evidence tending to establish, and admits all reasonable inferences which may be drawn from the facts and the evidence. *Wright* v. *Julian,* 97

Ind. 109, authorities cited p. 110; *Willcuts* v. *Northwestern Mut. L. Ins. Co.*, 81 Ind. 300, and authorities cited.

*Second.* " On a demurrer to evidence, everything will be taken against the party demurring which the evidence tends to prove, including every fair inference to be drawn from the evidence." *Eagan* v. *Downing*, 55 Ind. 65; *Pinnell* v. *Stringer*, 59 Ind. 555; *Radcliff* v. *Radford*, 96 Ind. 482.

*Third.* On a demurrer there is no weighing of the evidence; all inferences are against the demurring party; and where there is a conflict, evidence favorable to him can not be considered. *Ruddell* v. *Tyner*, 87 Ind. 529; *Adams* v. *Slate*, 87 Ind. 573; *Bethell* v. *Bethell*, 92 Ind. 318, *vide* p. 325; *Wright* v. *Julian,* supra.

Guided by these rules, our task is to ascertain what facts the evidence tends to prove, what inferences these facts lead to, considered most strongly against the appellant, and, excluding the testimony favorable to it, accept that favorable to the appellee.

The testimony shows that the gun was taken to the office of the secretary of the society, where entries were made by exhibitors; that it was entered in the proper book; that appellee's agent was provided with an exhibitor's tag, directed to attach it to the gun and place it in the " Mechanical Hall," and that he obeyed the directions given him. This hall was a large building, and very insecurely fastened. It was not guarded by any policeman, or by any other person. It was proved that the chief of police of the city of Terre Haute, who was employed to take charge of the policemen engaged about the fair grounds, suggested to one of the principal officers of the society that there should be some policemen stationed about the " hall," but that officer directed him not to place any policemen about it, stating that " there was nothing in it." In making this statement the officer was in error, for there were articles of value in it besides the appellee's gun. From the hall, where it had been placed by the direction of the secretary, it was stolen and carried away. Sometime prior to

the time the fair was held, the society issued advertisements inviting persons to place articles on exhibition, and these advertisements were seen and read by the appellee, who was induced by them to place his gun on exhibition. In one of the rules issued by the society, and contained in one of its advertising pamphlets, was the following: "The association will keep an efficient police force on the grounds day and night to take care of articles on exhibition, but will not be responsible for any damages."

The clear and, indeed, the only legitimate inference from the evidence is, that the appellant neglected to keep an efficient police force on the grounds. It appears that the attention of its officers was called to the inadequacy of the police; to the fact that one place where valuable articles were kept was wholly without guard or protection. At a few places on the grounds there were policemen on guard, but none about the building where the appellee's gun was placed. So far as that spot was concerned, it was as if there had been no police protection at all supplied.

We do not deem it necessary or proper to discuss the general question as to the duties and liabilities of agricultural societies organized for the purpose of conducting fairs, for here the question is very much narrower. The question here is as to the liability of a society that invites and secures the exhibition of articles at its fair upon the promise to "keep an efficient police force on the ground day and night to take care of articles on exhibition." It may be true that where there is no promise of this character the exhibitor assumes the risk, but, as there is here a promise, that question is not before us, and, of course, is not decided.

It is an elementary principle that where a party publishes an offer to the world, and before it is withdrawn another acts upon it, the party making the offer is bound to perform his promise. An American author says: "I may bind myself contractually by a general proposal to do a particular thing for the benefit of any person who renders me a particular

service, or takes part with me in a common risk." 1 Whart. Con., section 24. The foundation and extent of this doctrine is well and philosophically discussed by an English writer who has collected many cases of different kinds illustrating the various phases of the · subject. Pollock Principles Con. 174. The essential difference between what Pollock calls a contract by advertisement, and an ordinary agreement, is that in the former case there is no complete contract until performance, while in the latter there is a contract as soon as there is an acceptance of the proposal. The principle we have stated finds its most frequent illustration and application in cases of the offer of rewards, but it is by no means confined to such cases. It is the principle which governs in the cases of the publication of time tables and rules by railroad companies. *Crocker* v. *New London, etc., R. R. Co.,* 24 Conn. 249; *Sears* v. *Eastern Railroad Co.,* 14 Allen, 433; *Denton* v. *Great Northern R. W. Co.,* 5 E. & B. 860. It is also the principle which controls in cases of general circular letters, and in prospectuses by joint stock companies and corporations. *Asiatic Banking Corporation, Ex parte,* L. R. 2 Ch. App. Cas. 391; *Maitland* v. *Bank, etc.,* 38 L. J. Eq. 363; *Warlow* v. *Harrison,* 1 E. & E. 295; *Adams' Case,* L. R., 13 Eq. 474. In the case before us, the appellee performed the act required of him by the party who issued the advertisement, and the contract was, therefore, complete.

As the appellant promised to do a specified act if the appellee would place his property on exhibition, and as the appellee did do this, it is impossible to hold that the former assumed no duties, without running counter to the best settled and most generally known rules of law. The promise means something, and if it does, then it did create an obligation. Either the promise imposed some duty on the promisor, or it is utterly meaningless; but it is not meaningless, and therefore it did impose some duty, and that duty was, in the very words of the promise itself, to " keep an efficient police force

on the grounds day and night to take care of articles on exhibition."

If a police force had been kept as promised, then a radically different case would have been before us ; but the clear inference from the evidence is that no force was kept about the hall where the property of the appellee was placed. The reason there were no policemen stationed there was because the appellant was negligently ignorant of the fact that there was at that place the property of exhibitors, put there in response to an invitation and in accordance with the directions of the appellant's officers.

It needs neither the citation of authorities nor the statement of arguments to prove that if one assumes a duty, and negligently omits to perform it, he must answer to the person to whom the duty was owing for the loss occasioned by the negligence.

The liability of the appellant does not arise out of the fact that the gun was stolen, but springs from the fact that there was a negligent omission of the duty which the appellant had assumed. The evidence fully tends to show that the negligent omission of the duty was the cause of the loss, and this is sufficient. It is sufficient where a cause is submitted to a jury, and even in prosecutions for the highest of crimes, that the circumstances lead by a just process of inference to the conclusion reached, and certainly this is sufficient where the defendant demurs to the evidence. The general rule is that conclusions may be deduced from the facts proved, and here there were abundant facts justifying the conclusions of the trial court upon every material point, but the rule is here more liberal to the plaintiff than the general one, for here the demurrer admits all the facts and inferences.

Counsel for the appellant do not refer to or place any stress upon the clause in the society's rules reading, " but will not be responsible for any damages," and it may be that we do an unnecessary thing in noticing it, but we have thought best not to pass it entirely unnoticed. It is evident that the clause

quoted does not withdraw the promise " to keep an efficient police force on the grounds day and night to take care of the articles on exhibition," but that it simply means that the society will furnish a police force, and, having furnished such a force, will not be responsible for losses. It would violate the plain meaning of the language to give the provision any other interpretation. If the promise to provide a police force had been complied with, then, under the clause quoted, the society would have been absolved from all liability, but the effect of that direct promise is not made null by the clause declaring that the society will not be responsible, for it is very plain that this clause can only be construed to absolve from responsibility in case the promise is kept.

The question as to the regularity of the entry of the gun is settled by the admissions of the secretary of the society, and, upon a demurrer to the evidence, there can be no question made as to the probability or improbability of the testimony.

Judgment affirmed.

Filed May 26, 1885.