# Prince v. Alabama State Fair.

*Action against Bailee to recover for Loss of Picture.*

1. *Bailment; gratuitous and lucrative, and liability thereof.*—In determining whether a bailment is gratuitous, without compensation or benefit to the bailee, or lucrative, from which the bailee is to derive benefit or profit, the inquiry is whether the bailment was accepted by the bailee for the purpose of his deriving benefit or profit either directly or indirectly ; and if a bailment was gratuitous, the bailee owes to the bailor the duty of slight care, only, in the keeping, preservation and restoration of the property, and is answerable only for gross negligence or bad faith ; but if the bailment is lucrative, or for hire, the duty of the bailee is to exercise reasonable skill and diligence in the keeping, preservation and restoration of the property, and he is responsible for ordinary negligence in the performance of this duty.

2. *Same; liability of fair association to exhibitor.*—Where the owner of a picture, at the invitation of a fair association had the picture placed on exhibiton at one of its fairs, in pursuance of the general purpose of the fair association to make its exhibits attractive, upon the promise of the association that at the close of the fair it would

[Prince v. Alabama State Fair.]

re-pack, ship and deliver the picture to the owner, the fair associa-
tion is a lucrative bailee, and is responsible for the loss of the picture
if caused by its negligence in failing to perform the duty created by
its terms.

3. *Same; when negligence imputed.*—The general rule is, that if a
bailee of goods, liable only for loss accruing from his negligence,
upon demand made, fails to re-deliver the goods, or does not account
for a failure to make delivery, *prima facie* negligence will be imputed
to him; and the burden of proving a loss without the want of ordinary
care is devolved upon him.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES J. BANKS.

This action was brought by the appellant, Mrs. Bettie
H. Prince, against The Alabama State Fair, a corpora-
tion, to recover one hundred dollars damages for the
conversion of a picture painted and owned by the plain-
tiff. The action was originally commenced in a justice
of the peace court. Upon judgment being rendered for
the plaintiff for one hundred dollars, the defendant appeal-
ed from said judgment to the circuit court. The complaint
filed in the circuit court contained two counts; one in
trover, and the other in case.

The evidence, as shown by the bill of exceptions, is
practically without conflict, except as to the value of the
picture; and it was substantially as follows: On Oct-
ober 17, 1891, the plaintiff in response to an invitation
from defendant, packed and forwarded by express,
at her own expense, to The Alabama State Fair, the
defendant, the painting involved in this controversy, for
the purpose of being used by the defendant for exhibi-
tion at its fair, under a contract with the defendant, that
after such purpose of exhibition had been fulfilled, the
defendant should re-pack, re-ship and return the paint-
ing to her.

The plaintiff demanded of The Alabama State Fair,
her painting; but not being able to find it, or to return
it to her, she brought the present suit against the corpo-
ration. The Alabama State Fair was not paid anything;
nor was it to be paid anything for exhibiting the paint-
ing; nor was it to derive any benefit from the transac-
tion, except the incidental benefit which would come to
it from an attractive exhibit, which would induce visi-
tors, and thus enhance its gate receipts.

The defendant's secretary, whose duty it was to at-

tend to the re-packing and shipment of the exhibits after the close of the fair, disclaimed in his testimony any personal knowledge of the contract between the defendant and the plaintiff, but testified that it was the usual practice that when exhibits were sent at the exhibitors expense, the fair re-packed them and re-shipped them to the owners, when the fair was closed. The picture involved in this controversy was received by the defendant, was awarded a premium, but has never been returned to the plaintiff. There was evidence introduced that the defendant employed, during the progress of its fair, a sufficient number of watchmen to guard the exhibits, and after the close of the fair, a sufficient number of laborers to re-pack and re-ship, with reasonable progress, the exhibits to their owners.

The plaintiff and another witness, who testified that he was a connoisseur of fine arts, fixed the value of the picture at one hundred dollars; and an amateur artist, introduced as a witness for the defendant, testified that it was not worth more than twenty-five or thirty dollars.

The cause was submitted to the court without the intervention of a jury, and upon the hearing of all the evidence, the court rendered judgment for the defendant. The plaintiff appeals, and assigns as error the rendition of this judgment.

H. K. WHITE, for appellant.—The relation of the parties to this action is that of bailor and bailee under an express contract of bailment, by which the bailee is bound to return to the bailor the painting, when the purpose of bailment has been fulfilled. The contract of bailment, where there is one, fixes the rights and duties of bailor and bailee. The bailee accepted the delivery of the painting for the purpose of using it as an exhibit at its fair, and so used the painting; and charged admission fee to their visitors to see its exhibits, of which the painting was one. The use of this painting by the bailee was a source of profit in the conduct of the fair. This was ample consideration for the contract on the part of bailee to return the painting to the bailor after its fair was over.—Story on Bailments, (9th ed.), §§ 31 et seq.; Vigo Agri. Society v. Brumfiel, 102 Ind.146.

2. The relation of bailor and bailee under such contract and circumstances as in this case, makes the bailee liable as an insurer just as a common carrier is liable,

[Prince v. Alabama State Fair.]

and, in order to defeat appellant's right to recover for loss of the painting, the bailee must show that the loss occurred either by "act of God, or of a public enemy, or by fault of the party complaining."—*Southern Express Co. v. Caperton*, 44 Ala. 101; *Southern Express Co. v. Crook*, 44 Ala. 468.

3. The negligence of bailee is implied from the failure to deliver the painting upon demand by appellant, and the burden of proving the loss without the want of such care as is imposed by the law, rested upon the defendant.—*Seals v. Edmondson*, 71 Ala. 509.

4. The proof by the plaintiff of the loss of the painting raises the presumption of negligence on the part of the defendant, and this presumption must be rebutted by the defendant by proving such care and diligence as to exclude the hypothesis that the loss occurred by reason of the defendant's neglect. —*Seals v. Edmondson*, 71 Ala. 509; *Schmidt v. Blood*, 9 Wend. 268; *Platt v. Hibbard*, 7 Cowan 500; *Claflin v. Meyer*, 75 N. Y. 260.

WARD & JOHN, *contra*.—1. The facts show this to be a bailment for the bailor's sole benefit, the gratuitous taking by the fair of the painting on deposit.—Schouler's Bailments & Carriers, § 14.

2. If the plaintiff made out a *prima facie* case by showing the deposit of the painting with the fair, and its failure to return it to her; the conduct of the fair in keeping watchmen over and in the buildings, where this painting was day and night from the opening of the exhibition, till all the exhibits had been packed and shipped, shows extra diligence and care and abundantly shows that the fair was not culpably negligent.—Schouler's Bailments & Carriers, § 23, n. on page 30.

3. It is a fair inference from all the evidence in this case that the painting was stolen without negligence of the fair. If so the fair would not be responsible.— Schouler's Bailments & Carriers, § 23 ; 2 Am. & Eng. Encyc. of Law, title Bailment, notes on page 52.

BRICKELL, C. J.—The primary question is, what was the relation created by the transaction into which the parties entered, and what were their respective rights, duties and liabilities springing from the relation. The transaction was a bailment; the painting was en-

trusted to the defendant upon its invitation, for a special object or purpose, upon a contract that when the object or purpose was accomplished, the painting would be returned or redelivered to the plaintiff.—Story on Bailments, § 2. The insistence of the counsel of the defendant is, that though there was a bailment of the painting, the bailment was of the class known as naked, gratuitous deposits, accepted as matter of mere favor or courtesy, from which the defendant was not entitled to benefit, or to recompense for any duty the bailment may have involved. If this be the true character of the transaction, the conclusion follows, which is deduced, that the defendant owed to the plaintiff the duty of slight care only, in the keeping, preservation and restoration of the painting, and is answerable only for gross negligence, or bad faith, to which the loss of the painting is directly traceable.—2 Kent, 560 ; Story on Bailments, § 62 ; Schouler on Bailments, § 14. But if the bailment was made at the instance, or on the invitation of the defendant, because of benefits, direct or contingent, it was expected would accrue; or on a contract, express or implied, having a legal consideration, it was not gratuitous. More properly it may be termed lucrative, and the duty of the defendant was the exercise of ordinary care in the keeping, preservation and restoration of the painting, and for ordinary neglect in the performance of the duty the defendant is answerable.—2 Kent, 565 ; *Moore v. Mayor*, 1 Stew. 284 ; *Seals v. Edmondson*, 71 Ala. 509.

The transaction has in it the essential elements and characteristics of a lucrative', as distinguished from a mere gratuitous, bailment ; a bailment for the sole benefit of the bailor. It originated in the general proposal of the defendant to all persons having articles deemed worthy of exhibition, to intrust them to the defendant for that purpose, promising redelivery when the exhibition was closed. The proposal, though general in its terms, became a special contract with each person sending articles for exhibition, when the articles were received and accepted by the defendant.—*Vigo Agricultural Society v. Brumfiel*, 102 Ind. 146 ; s. c. 52 Am. Rep. 657 ; 1 Whart. Con., § 24 ; Pollock Principles of Contracts, 174. The contract was supported by a legal consideration—the detriment and inconvenience to which the sender was subjected at the instance of the defendant, in the transmis-

sion of the article, and the benefit, though indirect and contingent, which the defendant contemplated would accrue from the exhibition. In *Vigo Agricultural Society v. Brumfiel,* 102 Ind. 146, *supra,* a case not distinguishable from the present, it was said by Elliot, J.: "The bailment was not a gratuitous one, for the reason that the exhibition of the gun, in response to the invitation contained in the advertisement of the appellant, constituted a consideration for the undertaking. It may be true that both parties derived a benefit, but this did not strip the contract of its character, that of a bailment for reward. The reward was not, it is true, in money, but it was nevertheless a reward in the form of an act performed at the request of the bailee. An association which invites persons to supply articles to enable it to conduct an exhibition, receives some consideration from the person who responds to the invitation by placing articles in its care for exhibition." In determining whether a bailment is gratuitous or lucrative—a bailment without compensation or benefit to the bailee, or from which he is to derive benefit or profit—the inquiry is not directed to the character or certainty of the benefit or profit; it is whether the bailment was accepted for the purpose of deriving the one or the other.—Schouler on Bailments, §§ 9, 29, 90. Upon this point, the observations of *Bigelow, J.,* in *Newhall v. Paige,* 10 Gray 366, are instructive: "A person becomes a bailee for hire, when he takes property into his care and custody for a compensation; the nature and amount of the compensation are immaterial. The law will not inquire into its sufficiency, or the certainty of its being realized by the bailee. The real question is, was the contract made for a consideration? If so, then it was a *locatum* and not a *depositum,* and the defendant was liable for the want of ordinary care. The general rule as to the consideration of a contract is well understood, and is the same in case of bailments as in all other contracts. The law does not undertake to determine the adequacy of a consideration. That is left to the parties, who are the sole judges of the benefits or advantages to be derived from their contracts. It is sufficient if the consideration be of some value, though slight, or of a nature which may inure to the benefit of the party making the promise. Where such a consideration exists, a contract cannot be said to be a

*nudum pactum*, nor a bailment, a gratuitous undertaking.''

With the growth and expansion of commerce, of trade, of industrial pursuits, multiplying every species of contracts, drawing all classes into more frequent and varied intercourse, bailments multiply, and it is sometimes a matter, not free from difficulty, to determine to what class a particular transaction may belong, or, when that is ascertained, the measure of duty the bailee assumes. It is not too much to say, that each transaction depends largely upon its own facts and circumstances, and the existing relations, if any, the parties may bear to each other.

When the objects and purposes of the parties to the present transaction are considered, its real nature and character, nor the relations of the parties, can be misapprehended. The defendant proposed to conduct a general fair or exposition, such as is now frequent and customary; not for the purpose as in other countries and times, of gathering buyers and sellers of merchandise, but which, because of the variety of the things to be exposed to the view of visitors, would attract public attention, inducing a large number of visitors, who would pay the required charge for admission. The feature of competitive exhibition was introduced, to increase the number, and improve the character of, the things or articles entrusted to the defendant for exhibition. The defendant was moved by the benefits it supposed would accrue to it, and of these benefits, was the reward or recompense to be derived from the pecuniary receipts from visitors. The plaintiff was moved by the possibility that a premium would be awarded to her painting, as a work of skill and art, and the gratification thereby afforded her. Each party was subjected to detriment and inconvenience, not incurred as matter of favor, or gratuitously, but in anticipation of benefits which might accrue.

The general rule is, that if a bailee of goods, answerable only for losses occurring from his negligence, on demand made, fails to deliver them, or does not account for a failure to make delivery, *prima facie*, negligence will be imputed to him; and the burden of proving a loss without the want of ordinary care, is devolved upon him. The rule is founded upon necessity, and upon the presumption that a party who, from his situa-

tion, must have peculiar, if not exclusive, knowledge of facts, if they exist, is best able to prove them. If the bailee, in whose possession and under whose care and control goods are, will not account for the failure or refusal to deliver them on demand made, it is not a violent presumption, that the failure is attributed to his negligence in caring for the goods, or that he has wrongfully converted, or wrongfully retains them. If there be injury to, or a loss of, the goods during his possession, it is for him to show the circumstances; acquitting himself of a want of the care in keeping them it was his duty to bestow.—*Seals v. Edmondson*, 71 Ala. 509, and authorities cited. There is some discrepancy and conflict of authority on this proposition, but the rule prevails in this State, as we have expressed it, and we regard it as supported by the better reasoning. It is said by Ch. Kent, that "diligence is a relative term ; and it is evident that what would amount to the requisite diligence at one time, in one situation, and under one set of circumstances, might not amount to it in another. The deposit is to be kept with the care applicable to it under the circumstances."—2 Kent 561. And the degree of care any and every bailee must bestow, is materially dependent upon the nature and value of the thing bailed, and its liability to loss or injury. As is said by Judge Story, "A man would not be expected to take the same care of a bag of oats as of a bag of gold ; of a bale of cotton as of a box of diamonds or other jewelry, of a load of common wood as of a box of rare paintings ; of a rude block of marble as of an exquisitely sculptured statue. The value, especially, is an important ingredient to be taken into consideration upon every question of negligence; for that may be gross negligence in the case of a parcel of extraordinary value, which in the case of a common parcel would not be so. The degree of care which a man may reasonably be required to take of any thing must, if we are at liberty to consult the dictates of common sense, essentially depend upon the quality and value of the thing, and the temptation thereby afforded to theft. The bailee, therefore, ought to proportion his care to the injury or loss which is likely to be sustained by any improvidence on his part."—Story on Bailments, § 15. The parties contemplated that during the progress of the fair, the painting would be exposed to public view,

and that large numbers of all the varied classes of the community would attend the fair. This is the situation, and these the circumstances under which the defendant was bound to the duty of ordinary care in the keeping and preservation of the painting. If, while the fair was in progress, and while the defendant had in employment and service a sufficient number of policemen to guard the exhibits from injury, preventing unauthorized removals, or thefts, the painting had disappeared, or been lost, it may be, all presumption of negligence would be repelled. Considering the circumstances, and the situation in which it was intended by the parties the painting should be placed, in the absence of evidence that it was exhibited in a place, which rendered it peculiarly subject to theft or unauthorized removal because of its intrinsic character and value, a want of ordinary care, could not be imputed when it was committed to the vigilance of officers of the law, charged with the duty of protecting and preserving it. But if the evidence be not direct and positive, the only fair and reasonable inference from it is, that the loss did not occur while the fair was in progress, and it was under the vigilance of the policemen. It occurred after the close of the fair, when the policemen had been withdrawn, and when the duty of the defendant to repack and reship the painting to the plaintiff was absolute. Performance of the duty was entrusted to a corporate agent or officer who was not informed that the painting had been exhibited, or had ever been in the possession of the defendant. The servants employed to aid him in the performance of the general duty of returning exhibits to the owners, were unknown to him, and of their skill or integrity, there is a want of evidence. This was not a degree of care adjusted to the nature and value of the painting, and the temptations to theft, or unauthorized removal, it afforded. A degree of care, having a just proportion to the injury or loss likely to ensue from any improvidence on the part of the defendant, was not exercised, for the corporate agent or officer who alone could bestow it, was not informed that the necessity or occasion for its exercise existed. His want of knowledge that the painting had been exhibited, or had been in the possession of the defendant, was the fault and neglect of the defendant. The presumption of negligence arising from the failure

of the defendant to deliver the painting on demand, so far from being removed, is strengthened ; and for the value of the painting the defendant is answerable. The weight of the evidence fixes the value at one hundred dollars.

The judgment of the circuit court must be reversed, and a judgment here entered, that the appellant have and recover of the appellee one hundred dollars, with the interest thereon from the day of the judgment before the justice of the peace added, together with the costs before the justice and in the circuit court. The appellee will pay the costs of appeal in this court, and in the circuit court.

Reversed and rendered.