[No. 720-1.   Division One—Panel 1.   December 20, 1971.]

Clarence I. Jasper, *Appellant,* v. Morris Boats, Inc., *Respondent.*

*Ivan E. Merrick, Jr.,* for appellant.

*Bell, Inghram, Johnson & Level* and *Edward E. Level,* for respondent.

WILLIAMS, J.—Plaintiff instituted this action to recover for loss of gear and equipment stolen from his gill net fishing boat. The case was tried to a jury. Plaintiff appeals from the order granting an involuntary nonsuit at the close of his case.

The facts which we draw from the evidence in a light most favorable to appellant, as we must, are these: Appellant called respondent's manager on the telephone about storing his 34-foot boat in respondent's boatyard. During the conversation, appellant inquired about security. He was told that the yard was secure and that it was patrolled. The manager did say, however, that there was danger of "sneak thieves" and that items of equipment which could easily be stolen should be removed during storage. Pursuant to this conversation, appellant brought his boat to respondent's yard, where it was hauled out and placed upon blocks at a location within the yard selected by respondent. The yard was about 1¼ acres in size and located at the 14th Street yacht basin in Everett. Three sides were unfenced. A number of other boats were also stored there and the area was illuminated by a large pole light. Appellant's boat was visible from the yard office. Respondent had the authority to place the boat any place within the yard; appellant had the authority to go aboard his boat and to keep the below decks locked.

During the period of storage, which lasted over the winter months, some persons unknown stole the hydraulic gear for the reel from the deck of the boat; engine pumps, batteries, 600 fathoms of gill net, weights, floats, and other fishing equipment from the cabin and below. Access to below decks was gained by forcing a lock on the cabin door. The thefts required considerable time and effort, for the batteries each weighed 75 pounds and were difficult to remove. It was necessary to saw through a 1¾-inch shaft of case-hardened steel to free the hydraulic gear on the deck; and the gill net, which weighed about 1,800 pounds, had to be "threaded out" from its location under one of the bunks in the cabin.

The case was presented on the theory of bailment. Respondent contended that the facts did not support that theory, but rather that there was a relationship of landlord and tenant. In granting the nonsuit, the court found that the possession of respondent did not create a contract of bailment and that appellant had not proved respondent's negligence.

In order to establish liability under either the bailment or tenancy theory, it was necessary for appellant to prove that respondent had breached some duty which he owed to appellant and which proximately resulted in a loss. Bailment: *Theobald v. Satterthwaite*, 30 Wn.2d 92, 190 P.2d 714, 1 A.L.R.2d 799 (1948); *Colburn v. Washington State Art Ass'n*, 80 Wash. 662, 141 P. 1153, 1915A L.R.A. 594 (1914); Tenancy: 49 Am. Jur. 2d *Landlord and Tenant* § 288 (1970); Annot., 58 A.L.R.2d 1289 (1958). Respondent, as bailee, was not required to excuse his failure to redeliver because the evidence was uncontradicted that the items were stolen.

The issue on this appeal, then, narrows to a determination of whether there was substantial evidence of a breach of duty by the respondent which should have gone to the jury. We hold that there was. It is realistic to infer from the evidence that the patrolling to which respondent referred meant not a police visit twice a week, but rather an effort which under the circumstances could be expected to afford reasonable protection to the boats in the yard. A jury could have found that patrolling was a substantial factor in inducing appellant to store his boat there and that the absence of reasonable patrolling was the proximate cause of appellant's loss.

The early opinion in *Colburn v. Washington State Art Ass'n, supra*, cited by respondent, illustrates the point. In that case a jewelry merchant loaned gems to the art association for display in its museum. During the negotiations one of the curators advised the merchant that the show cases where the gems were to be put were secure and that

a watchman was there all of the time. The gems were stolen. In reversing the superior court award to the merchant for his loss, the court stated in *Colburn,* 80 Wash. at 672:

> there is no evidence worthy of serious consideration affirmatively showing that appellant did not do all it promised to do, and the loss being concededly by theft, the burden of showing appellant's negligence was upon the respondent.

This aspect of *Colburn* is particularly significant because the court was distinguishing *Vigo Agricultural Soc'y v. Brumfield,* 102 Ind. 146, 1 N.E. 382, 52 Am. R. 657 (1885), wherein the society, as bailee, had expressly agreed to keep an effective police force on duty in the building where Brumfield's gun was on exhibition at the time it was stolen. In deciding that *Vigo* was not controlling, the supreme court said:

> It affirmatively appeared from the evidence in that case [*Vigo*] that no policemen or watchmen whatever were kept in or about the building, and it was treated as though nothing of value were stored therein. Upon this theory, apparently, the society was held liable for the loss of the gun. Manifestly, *it neglected to do the very thing it expressly promised to do, and thus incurred liability as for negligence.*

(Italics ours.)

In the case before us, the jury should be permitted to consider the evidence to determine what duty, if any, respondent had for security arrangements and, if it was responsible therefor, whether it breached a duty which resulted in a loss to appellant.

Reversed for a new trial.

HOROWITZ, C.J., and UTTER, J., concur.