ATMORE TRUCKERS ASSOCIATION,
Inc., Appellant,

v.

WESTCHESTER FIRE INSURANCE
COMPANY, Appellee.

No. 15118.

United States Court of Appeals,
Fifth Circuit.

Jan. 18, 1955.

Leon G. Brooks, Brewton, Ala., C. M. A. Rogers, Mobile, Ala., Brooks & Garret, Brewton, Ala., McCorvey, Turner, Rogers, Johnstone & Adams, Mobile, Ala., for appellant.

Alexander Foreman, Jr., Mobile, Ala., for appellee.

Before BORAH, RIVES, and TUTTLE, Circuit Judges.

BORAH, Circuit Judge.

This action was brought by Westchester Fire Insurance Company against appellant Atmore Truckers Association, Inc., to recover damages for the loss by fire of certain rayon yarn which was stored in appellant's warehouse by appellee's assured, Goodwill Manufacturing Company.

In the complaint it was alleged that appellee issued its policy of fire insurance to Goodwill under the terms of which it agreed to indemnify Goodwill the owner of the rayon yarn against all direct loss and damage by fire; that thereafter and during the life of the policy contract the rayon, which still remained the property of the insured, was damaged by fire and water; that when damaged the rayon was stored with the appellant as a public warehouseman and for which appellant received a good and valuable consideration; that appellant failed to exercise ordinary care and diligence in and about the storing of the merchandise and as a proximate result the loss ensued. It was further alleged that appellee paid to its assured the amount of its loss under the policy and in consideration of such payment Goodwill assigned to appellee and appellee became subrogated to all rights of Goodwill to recover the amount of the loss so paid.

In its amended answer to the complaint appellant set up two defenses. The first defense was, in effect, the general issue but the second defense was a special one setting out that it did not receive and store the rayon of Goodwill in its warehouse as a public warehouseman but as an accommodation and service to Goodwill, for which it received only five cents a bale to cover the cost of moving the rayon and that nothing was actually paid for the bailment itself. It was further alleged that appellant refused to issue a warehouse receipt to Goodwill covering the rayon but accepted and stored it in its warehouse without compensation and profit to itself and as a gratuitous bailee. Appellant denied that it owed to Goodwill the duty of exercising ordinary care and diligence in and about the storing of the rayon; that if it was guilty of negligence, it was in no way grossly negligent, and that it discharged its responsibility to Goodwill in the premises in the manner required of it by law.

The case came on for trial on these issues. At its end the court sitting without a jury found the facts specially and stated separately its conclusions of law thereon [120 F.Supp. 7] and on the basis of its findings directed the entry of a judgment for plaintiff-appellee in the amount of $7,417.08. This appeal followed.

Agreeable to the stipulations of the parties the court found these uncontroverted facts: that Goodwill was the owner of certain rayon yarn stored in appellant's warehouse; that appellee insured the rayon yarn against loss and damage by fire; that the yarn was damaged by fire and appellee paid the loss and became subrogated to all rights of Goodwill; that at the time of the fire, appellant was operating a cotton gin, which was in the process of ginning cotton, and which was located south of and in proximity to the warehouse, being separated therefrom by a 56 foot lot, also owned by the appellant; that the warehouse was of brick, covered with a fireproof roof, and the entrances had metal doors. There were two entrances in the south wall of the warehouse, and these entrances were approximately ten feet in width. The metal doors thereto were on rollers, and opened or closed by sliding parallel to the wall.

From the evidence which was offered at the trial the court made the following additional findings:

"During the spring of 1951, the Goodwill Manufacturing Company through its then General Manager, Mr. Raymond Eisenhard, and the defendant through its manager, Mr. Q. E. Wells, entered into an agreement whereby the defendant permitted Goodwill Manufacturing Company to store the rayon yarn in its warehouse, and whereby Goodwill Manufacturing Company agreed to pay five cents per bale per month for the convenience of storing the rayon yarn in the defendant's warehouse, which payments were made in accordance with the agreement. These payments were not solely to compensate the defend-

ant for the expense incurred in handling the rayon yarn.

"In the process of ginning cotton during August 1951, the defendant's gin discharged inflammable waste material on the lot between the gin and the warehouse, which waste was permitted to accumulate in considerable quantity, extending across the lot from the gin and up against the south wall of the warehouse adjacent to one of the doorways in the south wall.

"While the above conditions existed, on August 22, 1951, a fire occurred in the lot between the gin and the warehouse, the flames of which traveled from the direction of the gin toward the south wall of the warehouse on or along the inflammable waste material and into the warehouse. The evidence was in direct conflict as to whether the doorway was open or closed when the fire occurred. In any event, as a result of the fire, the rayon yarn stored in the defendant's warehouse was damaged by fire and water in the amount above stated.

"The defendant was negligent in permitting this inflammable waste material to accumulate in large quantities extending across the lot from the gin and up against the wall and door of the warehouse, and the damage to the rayon yarn was the proximate result of such negligence."

On this appeal and in support of the errors claimed appellant urges upon us two contentions: (1) that the court should have granted the motion [1] of the defendant (appellant) for a judgment in its favor after plaintiff (appellee) had completed the presentation of its evidence for the reason that the testimony which established the relationship of bailor and bailee also proved that the appellant was a gratuitous bailee, liable only for gross negligence and that such negligence was not proven; and for the further reason that the burden was on the plaintiff to prove that the fire was the result of appellant's negligence and that that burden was not met since the evidence then before the court was vague respecting the origin of the fire, the place of its origin or its having resulted from any act or omission of the appellant; and (2) that if this be not so, then the court erred in its conclusion in finding that the appellant was a bailee for hire and that it was liable to the appellee by reason of its negligence.

■ Viewing the evidence in the light most favorable to appellee as we must, we are of the clear opinion that when the appellant filed its motion for judgment there was substantial evidence before the court to show: (1) that appellant was a public warehouseman and a bailee for hire in possession of the rayon yarn belonging to Goodwill; (2) that the rayon was damaged as a result of a fire which spread from the inflammable waste material that appellant had negligently allowed to accumulate on the vacant lot between the gin and warehouse door; and (3) that as a proximate result of appellant's negligence the rayon belonging to Goodwill, and to whose right appellee became subrogated, was damaged by fire and water.

■ The evidence here is all one way and to the effect that the appellant received five cents per bale for the storage of the rayon yarn in its warehouse. Appellant contends that this sum was to cover the cost of moving the yarn from one place to another in the warehouse, and that the payment was solely for such purpose. The trial judge rejected this contention and with clear support in the record [2] found that the payment of

1. The court and counsel regarded the motion as a motion to dismiss under Rule 41(b), Federal Rules of Civil Procedure, 28 U.S.C.A.

2. Eisenhard, Goodwill's manager who arranged for the storage of the yarn with Wells, who was appellant's manager, testified by deposition as follows:

five cents per bale per month was for the convenience of letting Goodwill store the rayon in appellant's warehouse and was not solely to compensate the appellant for the expense incurred in handling the rayon yarn. Having thus found as a fact that appellant was compensated for the storage of the rayon the court was right in regarding the amount of compensation as immaterial and in holding that appellant became a bailee for hire and was liable for the loss proximately resulting from its negligence in failing to exercise ordinary care.

■ We agree with the trial judge that appellant was a bailee for hire and not a gratuitous bailee. The distinction between a gratuitous bailment and a bailment for hire was clearly delineated by the Alabama Supreme Court in Prince v. Alabama State Fair, 106 Ala. 340, 17 So. 449, 450, 28 L.R.A. 716. In that case the court cited with approval Newhall v. Paige, 10 Gray, Mass., 366, and quoted the following language from that opinion: " 'A person becomes a bailee for hire when he takes property into his care and custody for a compensation. The nature and amount of the compensation are immaterial. The law will not inquire into its sufficiency, or the certainty of its being realized by the bailee. The real question is, was the contract made for a consideration? If so, then it was a locatum, and not a depositum, and the defendant was liable for the want of ordinary care. The general rule as to the consideration of a contract is well understood, and is the same in case of bailments as in all other contracts. The law does not undertake to determine the adequacy of a consideration. That is left to the parties, who are the sole judges of the benefits or advantages to be derived from their contracts. It is sufficient if the consideration be of some value, though slight, or of a nature which may inure to the benefit of the party making the promise. Where such a consideration exists, a contract cannot be said to be a *nudum pactum*; nor a bailment, a gratuitous undertaking.' "

■ Appellant argues that since the evidence was vague and did not establish the origin of the fire no negligence on its part was shown. But the liability of appellant is not dependent on a showing that it was negligent in starting the fire. Appellant was a bailee for hire and it was required to exercise reasonable care to protect the rayon from fire. As was said in Aircraft Sales & Service v. Bramlett, 254 Ala. 588, 49 So.2d 144, 148: "It is also the rule that this duty to exercise reasonable care extends not only to the means employed to prevent a fire, but also to the means and agency used to arrest the progress of a fire after it is once started. * * * The question of reasonable care is to be determined from all the circumstances and is affected by the character or kind of property stored (here highly inflammable property); its environs, such as its proximity to elements or agencies which might subject it to injury or destruction."

Finding no errors in the judgment appealed from and for the reasons stated, it is affirmed.

"Q. Isn't it a fact that the sum you agreed to pay him per bale was in payment of the convenience of letting you store the items there? A. That's right."
Wells testified as follows:
"Q. Oh, yes, so this five cents per bale was not paid for loading or unloading or moving about, it was paid for the convenience of storing that rayon in your place? A. You can look at it either way.

"Q. That is the way you looked at it, at the time, is it not? It was paid to your company, the Atmore Truckers, for the convenience of their storing that rayon in your place? A. They paid it for what we did for them.
"Q. That is what you did for them, storing the material? A. That is what we did, yes, sir."