GENERAL GRAIN, INC. *v*. INTERNATIONAL HARVESTER CO.

[No. 20,506. Filed January 5, 1968. Rehearing denied February 9, 1968. Transfer denied April 4, 1968.]

*Fulmer, Burris & Byrum* and *William K. Byrum,* of Indianapolis, for appellant.

*Ice, Miller, Donadio & Ryan* and *Alan H. Lobley,* of Indianapolis, for appellee.

COOK, P. J.—This is an action brought by appellant, General Grain, Inc., against appellee, International Harvester Co., for damages because of negligence arising out of the storage and servicing of appellant's International Harvester semi-tractor.

The semi-tractor was delivered to appellee's garage in the late afternoon by appellant's regular driver of the truck, Tom Wertsbaugh, who parked it on the driveway in front of appellee's service entrance doors. Wertsbaugh left the ignition keys in the motor vehicle. He then went inside appellee's garage and signed a work order authorizing specified work to be done on the tractor.

The printed form work order furnished by appellee and signed by Wertsbaugh contained the statement that International Harvester was:

". . . not responsible for loss or damage to the motor vehicle or its contents due to collision not due to (its) negligence; or due to fire, theft or other casualties regardless of whether or not such fire, theft or other casualties is due to (its) negligence; and (International Harvester Company) and (its) agents are hereby released from any and all claims for such loss and damage." (Matter in parentheses added for clarity.)

Appellee retained the work order and did not furnish a copy to appellant.

The trial court found that neither Wertsbaugh nor his superiors were aware of the exculpatory language, although it had appeared on previous work orders signed on behalf of appellant.

The trial court also found that the appellee knew, or should have known, that the keys were still in the tractor when it closed the garage for the day. The appellee admits that it negligently permitted the tractor, with the keys in it, to stay on its unguarded and unfenced lot adjacent to U.S. Highway 52, a heavily traveled highway extending through Lafayette, Indiana.

When appellee reopened its garage the next morning, its employees discovered the semi-tractor had disappeared during the night. The tractor was never recovered.

The trial court stated the following relevant conclusions of law:

"2. The *contract* of bailment by which the Plaintiff delivered its tractor to the Defendant provided that the Defendant would not be liable for any loss due to theft while the tractor was in the Defendant's possession regardless of whether or not such theft was caused by the Defendant's negligence.

"3. The loss suffered by the Plaintiff was a loss due to theft while the tractor was in the Defendant's possession pursuant to the aforesaid *contract* of bailment.

"4. The limitation of liability in the *contract* of bailment between Plaintiff and Defendant was a valid limitation and was not against the public policy of Indiana." (Our emphasis.)

The judgment followed the conclusions of law that appellant "take nothing by its complaint."

We need consider only appellant's assigned error that the trial court erred in overruling its motion for a new trial, which motion contains the specification, "the decision of the court is contrary to law."

Appellant argues that the provision in the work order exempting appellee from liability for negligence resulting in theft of its vehicle is against public policy and is void; and that appellant is not bound by such provision because the material elements necessary to a binding contract are lacking.

Appellee aserts that "this argument is without merit for it has long been recognized that one may by contract limit his liability even for his own negligence. The only exception to this rule is with regard to utilities, public warehouses, common carriers, and other businesses affected by a public interest and usually regulated by the public."

We recognize the well established general rule that parties to a *contract* are free to negotiate and include such terms as they see fit, provided their agreement does not violate statutory inhibitions or does not contravene the public policy. Thus, where the parties have substantially equal bargaining power, one party may contract to exempt the other party from liability for the consequences of the

latter's own negligence, as in the case of a negotiated lease of real estate. *Loper* v. *Standard Oil Co., et al.* (1965), 138 Ind. App. 84, 7 Ind. Dec. 153, 211 N. E. 2d 797.

Neither the Supreme Court nor this court has examined an exculpatory provision in a bailment relationship involving a motor vehicle since *Keenan Hotel Co.* v. *Funk* (1931), 93 Ind. App. 677, 177 N. E. 364. In *Keenan,* this court held that a claim check given to a car owner bearing the legend, "We are not responsible in case of fire, theft or accident," would not relieve the appellant hotel from liability if appellee's car was stolen from the parking lot through appellant's negligence.

The rule is well established in Indiana that where the bailor of goods has shown that they were received in good condition by the bailee and were not returned to the bailor on demand, the former has made a prima facie case of negligence against the bailee and the latter must show that the loss or damage was caused without his fault. *Employers Fire Ins. Co.* v. *Consolidated Garage & Sales Co., et al.* (1926), 85 Ind. App. 674, 155 N. E. 533.

The parties to this appeal recognize the difference in the responsibilities of a "professional bailee" as distinguished from an "ordinary bailee." As noted, there is disagreement as to the category in which appellee should be placed.

"Professional bailees" are those who make it their business to act as bailees and who deal with the public on a uniform rather than an individual basis. Appellee cannot perform its day to day services offered to the public without creating a bailment relationship either by contract or implication of law. The delivery of appellant's tractor to appellee was an incident to the latter's business.

We would enlarge the scope of a "professional bailee" beyond the definition conceded by appellee to include storage and repair garages. In so doing we are not changing the law. We are simply invoking a reasonable and realistic application of existing law.

It may be safely assumed that a "professional bailee" may not limit his liability by a mere notice posted on his premises or printed on a receipt, claim check, or work order. It cannot be presumed that appellant in delivering its motor vehicle to appellee intended to waive its legal rights; the presumption being quite as strong appellant intended to insist upon them. A notice or statement of terms, such as the one here in issue, is at most only a proposal. It does not bind a bailor delivering property to a bailee unless the former assents to the terms proposed. In this case there was no assent.

The trend of modern decisions, and indeed the great weight of the authorities, are against the validity of exculpatory clauses or provisions on behalf of garage owners because they are now uniformly classified as "professional bailees." This rule gains in force where (as the trial court found) the appellant did not have any knowledge of the disclaimer of liability. *Agricultural Ins. Co.* v. *Constantine* (1944), 144 Ohio St. 275, 58 N. E. 2d 658; *Althoff* v. *System Garages, Inc.* (1962), 59 Wash. 2d 860, 371 P. 2d 48; *Nuell* v. *Forty-North Corp.* (1962), 358 S. W. 2d 70.

The same rule prevails even though in previous bailments between the same parties the bailor has received the same or similar receipts or claim checks but did not read them or know that they contained terms. *Brown* v. *Hines* (1923), 213 Mo. App. 298, 249 S. W. 683.

The trial court erred in denying a recovery to appellant.

The judgment is reversed and the trial court ordered to restate its conclusions of law consistent with this opinion.

Reversed, as ordered.

Bierly, Pfaff and Smith, JJ., concur.

NOTE.—Reported in 232 N. E. 2d 616.