No. 49,674

JAMES R. NOLAN, *Appellee,* v. AUTO TRANSPORTERS, d/b/a NATION-
WIDE AUTO TRANSPORTERS, INC., *Appellant.*

(597 P.2d 614)

Opinion filed July 14, 1979.

*Karl Zobrist,* of Blackwell, Sanders, Matheny, Weary, and Lombardi, of Kansas City, Missouri, argued the cause, and *John J. Bukaty, Jr.,* of Bukaty and Bukaty, of Kansas City, was with him on the briefs for the appellant.

*Donald W. Vasos,* of Scott, Daily, Vasos, and Lester, of Kansas City, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by a bailor-shipper against a bailee-carrier to recover damages resulting from negligent in-

jury to a motor vehicle. The defendant-appellant, Auto Transporters, Inc., d/b/a Nationwide Auto Transporters, is engaged in the business of transporting motor vehicles between various points throughout the United States. It is licensed by the interstate commerce commission as an interstate carrier. The plaintiff-appellee, James R. Nolan, in March of 1977, contracted with Nationwide to transport his 1977 Oldsmobile from Los Angeles, California, to Davenport, Iowa. The automobile had been purchased around the first of March and had been driven 197 miles at the time it was delivered to Nationwide. Nolan had recently been transferred from California to the Kansas City area and was planning to be in Davenport, Iowa, while recuperating from recent hospitalization. At the time the automobile was delivered, Nolan and Nationwide executed an agreement for the transportation. The agreement is in the form of a shipping order. The shipping order authorized Nationwide Auto Transporters to pick up the automobile in Los Angeles and to deliver it in Davenport for a total sum of $155. A down payment of $55 was to be paid upon delivery of the automobile to Nationwide in Los Angeles. The balance was to be paid on delivery of the automobile to Nolan at its ultimate destination.

The shipping order contained a number of provisions pertaining to the time of delivery and limiting Nationwide's liability for delay. We note in particular the following:

"We are sorry that we can not guarantee any exact delivery time. . . .

"The carrier does not guarantee delivery on any particular schedule. Therefore, carrier will not honor auto rental accruals.

. . . .

"Under no circumstances will any guarantee of a delivery date or time be made. We cannot be responsible for any delivery times with respect to car rentals. . . . The number of days the car is in transit is under our jurisdiction, but no penalty may be imposed on us if the car is late for any reason. WE WILL MAKE EVERY EFFORT TO MOVE YOUR CAR AS FAST AS POSSIBLE."

The shipping order also contained the following conditions:

"It is expressly understood that unless otherwise requested nationwide will use casual drivers who are independent contractors. . . .

"Should nationwide be liable on account of loss or damage, it shall have the full benefit of any insurance in effect by the owner *as is standard with all driveaway companies.*"

On April 1, 1977, the automobile was extensively damaged in a one-vehicle collision when the automobile was driven off the

road by one of Nationwide's drivers at a point near Richfield, Utah. The cost of repairing the Nolan automobile was covered by Nolan's personal automobile insurance policy, except for the first $250, which was a deductible under the policy and, therefore, payable by the owner. The repair of the automobile was delayed approximately ten weeks by the inability of the automobile dealer in Richfield, Utah, to get replacement parts. While the car was being repaired, Nolan rented an automobile for his personal and business use. Nolan was in the insurance business and needed a car in order to carry out his profession. Plaintiff incurred rental expenses for substitute vehicles in the total amount of $1,296.12 while the car was being repaired. The automobile was finally repaired early in June 1977. On June 9, 1977, Nolan flew to Utah to pick up the car and drove it back to his home in Kansas City. The total amount of this travel expense was $434.03. It is these items of damage that are disputed on the appeal.

After recovering possession of his car, Nolan presented a claim to Nationwide for the damages and expenses incurred as a result of the injury to his automobile. Being unable to achieve a satisfactory settlement, Nolan filed this action in the limited action department of the Wyandotte County District Court pursuant to the Code of Civil Procedure for Limited Actions, K.S.A. 61-1601 *et seq.* In his petition, plaintiff pleaded the delivery of his automobile under the bailment agreement and then alleged that the automobile was involved in a one-vehicle collision occurring when the defendant's employee *negligently* lost control of the vehicle and ran off of the road down an embankment. Plaintiff further alleged that, as a direct and proximate result of defendant's *negligence* and breach of the bailment agreement and express warranties, he had been damaged in the sum of at least $2500. In its answer, Nationwide pleaded contributory negligence as a defense to the petition and, by way of an affirmative defense, alleged that the driver of the defendant's automobile was an independent contractor, not an agent or employee of the defendant and, therefore, Nationwide was in no way responsible for any of the "intentional or *negligent* acts" of the driver. On the morning of the trial, the plaintiff offered evidence and submitted his case on the theory that there is a presumption of negligence when personal property is damaged while in a bailee's possession. Nolan testified at the trial and identified bills and receipts

for his expenses totaling $2,317.39. The defendant did not contest the issue of liability and the only evidence that it offered was the shipping order. Following the hearing and after the parties had rested, the trial court entered judgment in favor of the plaintiff in the amount of $2,317.39 and costs, effective November 9, 1977. On November 10, 1977, the defendant filed a motion for a new trial, which was overruled by the trial court on November 16, 1977. On November 28, 1977, defendant filed a notice of appeal to the Court of Appeals with the Clerk of the District Court of Wyandotte County. Thereafter, the case was transferred to the Supreme Court for disposition.

At the outset, plaintiff Nolan urges that the appeal should be dismissed for lack of appellate jurisdiction. Plaintiff maintains that the notice of appeal was not timely filed. Plaintiff relies upon K.S.A. 61-2102(a), which provides as follows:

"(a) All appeals from actions pursuant to this chapter shall be by notice of appeal specifying the order, ruling, decision or judgment complained of, and shall be filed with the clerk of the court from which the appeal is taken *within ten (10) days after the entry of such order, ruling, decision, or judgment . . . .*" (Emphasis supplied.)

As noted above, the journal entry of judgment was filed on November 9, 1977. The defendant's motion for a new trial was filed on November 10 and denied by the trial court on November 16, 1977. The notice of appeal was filed on November 28, 1977. The plaintiff relies upon the strict wording of K.S.A. 61-2102 and argues that, under that section, a notice of appeal must be filed within ten (10) days after the entry of judgment. Since the journal entry of judgment was filed on November 9, 1977, the last day for filing a notice of appeal was November 19, 1977. It is the position of the defendant that the filing of the motion for a new trial suspended the running of the time for filing notice of appeal. Defendant points out that the motion for a new trial was filed on November 10 and overruled on November 16, 1977. The tenth day following the order overruling its motion for a new trial fell on Saturday and thus the defendant had until Monday, November 28, 1977, to file a notice of appeal.

In this regard, it should be noted that under chapter 60, K.S.A. 60-2103(a) expressly provides that the running of the time for appeal is suspended by the filing of a timely motion for a new trial and that the time for appeal does not commence until an

order has been entered denying the motion for a new trial. The issue arises in the case now before us because chapter 61 does not have a section comparable to 60-2103(*a*) and thus does not specifically provide for the tolling of the time allowed for filing a notice of appeal when the losing party files a motion for a new trial. Under a strict interpretation of chapter 61, the plaintiff is correct in his position that no timely appeal was filed by the defendant. We have concluded, however, that before an appeal may be taken either to the Court of Appeals or to the Supreme Court in any action, whether filed under chapter 60 or chapter 61, the district court must have exhausted its jurisdiction and the judgment appealed from must have become a final judgment, not subject to vacation or modification by the trial court on motion for a new trial.

At the time chapter 61 was adopted to govern civil procedure in courts of limited jurisdiction, an appeal taken from a court of limited jurisdiction went to the district court and was determined in the district court by a trial de novo. The Kansas trial courts were unified in 1976 by statutes effective January 10, 1977. At that time, many sections of the Code of Civil Procedure for Limited Actions were amended. One important change was provided in the amendment to 61-2102. The new statute differentiated between appeals in limited actions heard by a district magistrate and appeals in limited actions heard by a district judge or an associate district judge. Appeals from decisions of a district judge or an associate district judge are taken to the Court of Appeals. Appeals from decisions of a district magistrate judge are taken to a district judge or an associate district judge of the county to be heard de novo. The provision of K.S.A. 60-2103(*a*), providing for the suspension of the time for appeal pending the disposition of a motion for a new trial, was not specifically made applicable to appeals in cases involving limited actions under chapter 61. In our judgment, this was an oversight.

We have concluded that the orderly administration of justice requires the suspension of the time for filing a notice of appeal to an appellate court from the district court during the period a motion for a new trial is pending in the district court and until such motion is overruled. Both chapters 60 and 61 require that those Codes of Civil Procedure be liberally construed to secure the just, speedy, and inexpensive determination of every action or

proceeding. (K.S.A. 60-102 and 61-1608.) Since January 10, 1977, courts of limited jurisdiction, other than municipal courts, have been abolished. The only trial court in the state system is the unified district court. Until the trial court has had a full opportunity to correct trial errors by ruling on a pending motion for a new trial, the jurisdiction of the appellate courts of this state should not be invoked. A contrary rule might well result in unnecessary delays and expenses in the determination of such an action. Furthermore, it should be noted that K.S.A. 61-2101 authorizes an appeal from "a final judgment" or from "any order, ruling or decision which *determines* the action at any stage of the proceedings." We have held that a final order from which an appeal will lie is one which finally decides and disposes of the entire merits of the controversy, and reserves no further questions or directions for the future or further action of the court. *Connell v. State Highway Commission,* 192 Kan. 371, 388 P.2d 637 (1964); *Cusintz v. Cusintz,* 195 Kan. 301, 404 P.2d 164 (1965).

We have concluded that when an appeal is taken from a district court to an appellate court in an action brought either under chapter 60 or under chapter 61, the running of the time for filing a notice of appeal is suspended by the filing of a timely motion for a new trial and is to be computed commencing with the entry of an order overruling the motion for a new trial. We, therefore, hold that the notice of appeal was timely filed by the defendant, Nationwide, in this case.

We turn now to the merits of the appeal. The basic issue raised by Nationwide is that the trial court improperly permitted the plaintiff to recover two elements of damages: (1) the expenses incurred by the plaintiff in renting substitute automobiles while his own vehicle was being repaired and (2) the expenses incurred by the plaintiff in traveling to Utah in order to regain possession of his automobile. As noted above, the issue of liability was not disputed by the defendant; nor did the defendant dispute the right of the plaintiff to recover the $250 deductible and the cost of certain other repairs and loss of hubcaps during transportation. These items totaled $525. Simply stated, Nationwide maintains that the plaintiff's action was one necessarily based on the bailment contract, which, by the specific terms set forth in the shipping order, excluded any liability for damages resulting from delay in delivery. The defendant argues that the expenses relating

to rental vehicles and the expenses incurred by plaintiff in taking possession of his automobile were elements beyond the contemplation of the parties as shown by the specific language of the shipping order. Plaintiff relies upon the rule of *Hadley v. Baxendale,* 9 Exch. 341, 156 Eng. Rep. 145, 5 Eng. Rul. Cas. 502 (1854), which was recognized and followed in *Kansas State Bank v. Overseas Motosport, Inc.,* 222 Kan. 26, 563 P.2d 414 (1977). It is thus the position of Nationwide that the contract between the parties specifically covered the subject of delays in delivery, that the defendant cannot be held liable for such items of expense, and that the plaintiff cannot recover for such items in this breach of contract action. To the contrary, the plaintiff, Nolan, contends that the action is not one based on contract but is one in tort, based on the theory of negligence, and that, under a negligence theory, he is entitled to recover all damages which were the natural and probable result of the defendant's wrongful act. *Foster v. Humburg,* 180 Kan. 64, 299 P.2d 46 (1956). It cannot be denied that in his petition plaintiff based his right to recover in part on a negligence theory. In its answer, the defendant pleaded contributory negligence as a defense and further alleged that its driver was an independent contractor and, therefore, the defendant was not responsible for his *negligent acts.* It is clear that plaintiff in his petition asserted a cause of action in tort based upon the negligence of Nationwide's employees.

We have concluded that the district court did not commit error and that its judgment, awarding the disputed items of expense to plaintiff, should be affirmed. In arriving at this result we have considered and applied certain basic principles of law, well-recognized in this state. They are as follows:

1.   In the absence of proof to the contrary, the liability of a common carrier engaged in interstate commerce for loss sustained in transporting property is presumed to be its liability under the common law. At common law, a carrier is liable for the full loss sustained by the shipper unless the carrier effectively limits its liability. *First National Bank v. Bankers Dispatch Corporation,* 221 Kan. 528, 562 P.2d 32 (1977).

2.   A common carrier may relieve itself from the strict liability imposed upon it by common law by a special contract, but it cannot contract for exemption from the consequences of its agent's negligence. *K.C. St. J. & C.B. Rld. Co. v. Simpson,* 30

Kan. 645, 2 Pac. 821 (1883); *Missouri Valley R. Co. v. Caldwell,* 8 Kan. *244 (1871); 14 Am. Jur. 2d, Carriers § 554, p. 76.

3. A common carrier is, in law, a bailee for hire. A special contract of a common carrier that it shall not be liable for certain specific losses operates only to relieve it of liability as an insurer, and leaves it responsible for ordinary negligence as any other bailee for hire. *Missouri Valley R. Co. v. Caldwell,* 8 Kan. *244.

4. Where bailed property is damaged while in the possession of a bailee as the result of the bailee's negligence, the bailor has a choice of remedies. The bailor may elect to affirm the contract, waive the tort, and bring his action in contract; or he may abandon the contract and proceed against the bailee in an action in tort based upon the bailee's negligence. *Continental Ins. Co. v. Windle,* 214 Kan. 468, 520 P.2d 1235 (1974).

5. Where bailed property is destroyed or damaged while in the exclusive possession and control of the bailee, the law presumes the bailee's negligence or other fault to be the cause of the loss and casts on the bailee the burden of going forward with the evidence that the loss was due to other causes consistent with due care on its part. The presumption of lack of due care on the part of a bailee, where the bailment is destroyed or damaged while under his possession or control, is simply an application of the doctrine of res ipsa loquitur to the liability of a bailee. *Farm Bureau Mutual Ins. Co. v. Schmidt,* 201 Kan. 621, 443 P.2d 254 (1968); *Virginia Surety Co. v. Schlegel,* 200 Kan. 64, 434 P.2d 722 (1967).

6. In tort actions brought to recover damages for negligent injury to an automobile, when repairs can restore the automobile to its previous condition, the measure of damages is the fair and reasonable cost of the repairs plus a reasonable amount to compensate for loss of use of the automobile while being repaired with ordinary diligence, not to exceed the value of the property before the damage. *Venable v. Import Volkswagen, Inc.,* 214 Kan. 43, 519 P.2d 667 (1974); *Lester v. Doyle,* 165 Kan. 354, 194 P.2d 917 (1948); PIK Civ. 2d 9.10 (1977).

7. Damages for loss of use of a motor vehicle may be measured by the cost of renting a substitute vehicle while repairs are being made. 8 Am. Jur. 2d, Automobiles and Highway

Traffic § 1047, p. 608; *Nelson v. Hy-Grade Construction & Materials, Inc.,* 215 Kan. 631, 527 P.2d 1059 (1974).

8. One injured by the wrongful or negligent act of another may recover, as part of his damages, expenses incurred in the exercise of reasonable diligence to avoid the consequences and to lessen the injury. This is the doctrine of avoidable consequences. *Town Co. v. Leonard,* 46 Kan. 354, 26 Pac. 717 (1891); *St. L. & S. F. Rly. Co. v. Sharp,* 27 Kan. 134 (1882).

9. Under the doctrine of avoidable consequences, expenses which have been held to be recoverable include expenses reasonably incurred by the owner in reclaiming or taking possession of his property, 22 Am. Jur. 2d, Damages § 162, p. 232; *Campbell v. Company,* 91 N.H. 390, 20 A.2d 644 (1941), and traveling expenses made necessary by the circumstances in which the injured party was left as the result of the wrongful act. *Lewark v. Parkinson,* 73 Kan. 553, 85 Pac. 601 (1906).

With these basic principles of law in mind, we turn to apply them to the factual circumstances disclosed by the evidence in this case. The plaintiff's evidence established that his automobile was damaged as a result of the negligence of the defendant's agent, while the automobile was in the possession of the defendant as bailee. Plaintiff was entitled to recover in an action in tort based upon the defendant's negligence. As part of his damages, the plaintiff was entitled to recover for the loss of use of his automobile while it was being repaired with ordinary diligence. Damages for loss of use could properly be established by evidence of the cost of renting substitute vehicles while the repairs to plaintiff's automobile were being completed. We, therefore, find that the trial court did not err in allowing the plaintiff, as an element of damages, the expenses that he incurred for substitute vehicles. We, likewise, conclude that the plaintiff was entitled to recover reasonable expenses incurred by him in traveling to Utah to retake possession of his car. Plaintiff testified that such travel was taken to avoid further rental expenses either to himself or to Nationwide. The trial court, as trier of facts, apparently found that the expenses incurred were reasonable and were incurred for the purpose of mitigating damages under the doctrine of avoidable consequences. We find no error in awarding these expenses

to the plaintiff. The case must, therefore, be affirmed on the merits.

The plaintiff has moved the court to allow attorney fees and expenses as provided for in Supreme Court Rule No. 7.07(*b*), 224 Kan. xlviii. The court has considered the request and concluded that it cannot find that the appeal was taken by the defendant frivolously or solely for the purpose of harassment or delay. The motion for allowance of attorney fees is, therefore, denied.

Judgment affirmed.