SYSTEM AUTO PARKS & GARAGES, INC., Appellant (Defendant Below),

v.

AMERICAN ECONOMY INSURANCE COMPANY, Appellee (Plaintiff Below).

No. 2–680A170.

Court of Appeals of Indiana, First District.

Oct. 15, 1980.

Louis H. Borgmann, Indianapolis, for appellant.

A. M. Thomas, Indianapolis, for appellee.

ROBERTSON, Presiding Judge.

System Auto Parks & Garages, Inc. (System) was found liable due to an automobile being stolen from their parking lot. American Economy Insurance Co. (American), initiated this action to recover amounts that it had paid to its insured under an automobile insurance policy. The trial court, sitting without the intervention of a jury, found in favor of American in the amount of $1,500.00 dollars. We affirm.

The basic facts are not open to dispute. Nanette Cecil borrowed her father's car in order to go to work at Indiana Bell Telephone Company, and parked the car in System's lot. The receipt she was given and a sign stated that the keys to automobiles left on the lot after 6:00 P.M. would be taken to a garage approximately two blocks away which would be attended. The lot's hours were from 7:00 A.M. to 6:00 P.M. on the day in question. Cecil had parked her car at this lot before, and had an arrangement with the attendant, whereby the keys would be placed under the floor mat and the car locked when the attendant left. The owner would then open the car with a spare key and drive away.

The lot required that the keys be left with the car, in order to move them around as necessary, and Cecil paid for the parking in advance. When Cecil came to get the car after work on the day in question, it turned out that the car had been stolen, presumably after the attendants left at 6:00 P.M.

American paid its insured $1,330.00 for the loss of the car, and in addition, paid in excess of $300.00 in order for the insured to rent a substitute vehicle.

System argues on appeal that the trial court's verdict was: contrary to the evidence as to whether System contracted to be responsible for the car after closing hours; contrary to law relating to bailment contracts; contrary to law in that evidence of rental value of a replacement vehicle was allowed into evidence, and; improper and excessive in that the award included reimbursement for loss of a pleasure vehicle and costs associated with the rental of a replacement vehicle.

The law in Indiana regarding bailment contracts is well settled. As stated recently by this court in *Hainey v. Zink*, (1979) Ind. App., 394 N.E.2d 238:

It is the law in this state that in an action based upon breach of a bailment contract, a showing that the goods were received by the bailee in good condition and that they were in damaged condition when returned to the bailor, gives rise to an inference that the damage was caused through the fault or neglect of the bailee. Such an occurrence places upon the bailee the burden of producing evidence to show that the damage was caused without fault or neglect on his part. *Keenan Hotel Company v. Funk*, (1931) 93 Ind. App. 677, 177 N.E. 364. *See also Bottema v. Producers Livestock Association*, (1977) Ind.App., 366 N.E.2d 1189.

■ The critical question to be decided, is whether the bailment extended beyond the closing time of 6:00 P.M., as asserted by American, or whether the contract for bailment terminated when the attendants left the lot at 6:00 P.M. If we determine that the bailment continued, then System is liable for all damages proximately resulting from their conduct.

This precise issue has apparently not been presented before in Indiana, and neither party's brief is particularly helpful in deciding this issue. We remind counsel that this court is not in business to research support for a party's position.

American relies soley on *General Grain, Inc. v. International Harvester, Co.*, (1968) 142 Ind.App. 12, 232 N.E.2d 616 for support of the trial court's verdict. American argues that since System is a professional bailee, they owe a greater duty of care to its customers than an ordinary bailee. Therefore, regardless of the writing on the claim ticket or the posted signs, they are

responsible for damages to the bailor's property.

"Professional bailees" are those who make it their business to act as bailees and who deal with the public on a uniform rather than an individual basis. Appellee cannot perform its day to day services offered to the public without creating a bailment relationship either by contract or implication of law.

*General Grain*, (1968) 142 Ind.App. at 16, 232 N.E.2d at 618.

In applying this concept of professional bailee, the court determined:

It may be safely assumed that a "professional bailee" may not limit his liability by a mere notice posted on his premises or printed on a receipt, claim check, or work order. It cannot be presumed that appellant in delivering its motor vehicle to appellee intended to waive its legal rights; the presumption being quite as strong appellant intended to insist upon them. A notice or statement of terms, such as the one here in issue, is at most only a proposal. It does not bind a bailor delivering property to a bailee unless the former assents to the terms proposed.

*Id.*, 142 Ind.App. at 17, 232 N.E.2d at 619.

Consequently, the court in *General Grain* determined that exculpatory clauses cannot aid the professional bailee in escaping liability. The court found this to be true especially when the bailor was unaware of the disclaimer of liability. The court found the same rule to be applicable even when there had been previous bailments between the parties, and the bailor received receipts or claim checks but did not read them.

Although the language in *General Grain*, *supra*, is persuasive, it is clearly distinguishable. In *General Grain*, the bailor apparently was never aware of the conditions of the bailment and the limitations thereon. This cannot be said to be the case here. Clearly, Cecil was aware the lot closed at 6:00 P.M., and that her key would be at another location. Instead of picking her key up at the other garage, she elected to have System's attendant place the key under the floor mat. Consequently, it is possible to infer from her past conduct that, Cecil knew the lot was closed, and elected another course of conduct to retrieve her keys other than that offered by System.

Turning to our sister states, it is evident that there is a wide disparity of attitudes in dealing with this question. *See generally* 7 ALR 3d 927. Those cases which deny liability to the parking lot or garage generally appear to do so on the basis that putting the key under the floor mat when the lot closes amounts to constructive delivery of the automobile to the bailor. *See Tammelleo v. Solomon*, (1949) 75 R.I. 303, 66 A.2d 101 (bailment lasted only for time lot open if plaintiff is aware of this time, and upon expiration of that time, putting key under floor mat was constructive delivery); *Continental Ins. Co. v. Himbert*, (1948) La.App., 37 So.2d 605 (upon termination of the contract for safekeeping of a compensated deposit, there was constructive delivery of the automobile to the owner thereof); *Johnson v. Allright New Orleans, Inc.*, (1978) La. App., 357 So.2d 1210 (lot owner was able to exonerate himself from negligence, by showing of course of conduct established by agreement).

Those cases that support the parking lot's liability for damage to the bailed property occurring after hours and when the key is left with the car, rely on either the limitation not being called to the bailor's attention, the lot owner failing to exercise ordinary care for the vehicle, or the confusing language of the sign stating the lot's hours. Additionally, those cases realize that the relationship of the parties, and the conditions of the bailment are questions of fact for the trier of fact. *See General Exchange Ins. Corp. v. Service Parking Grounds, Inc.*, (1931) Mich., 235 N.W. 898 (inasmuch as the time stated on the ticket was not considered by either party as a limit of the bailment, or of the obligations of the bailee, it became inoperative through the conduct of the parties); *McAshan v. Cavitt*, (1950) 149 Tex. 147, 229 S.W.2d 1016 (lot owner must exercise ordinary care even after closing, and if bailor unaware of limitations, they do not become part of the bailment contract); *All-*

*right, Inc. v. Schroeder,* (1977) Tex.App., 551 S.W.2d 745 (notice that the lot closes at 6:00 P.M. may mean that cars will not be accepted after that hour. The fact that the closing time of the lot was posted on signs and was printed on the claim ticket does not exempt the operator of the lot from the exercise of ordinary care with respect to the safety of the property). *See also Edgar v. Parsell,* (1915) 184 Mich. 522, 151 N.W. 714; *Hearst Corp. v. Cuneo Press, Inc.,* (7th Cir. 1961) 291 F.2d 714; 8 C.J.S. Bailments § 41 (bailment contract to be determined by the intent of the parties); *Sisung v. Tiger Pass Shipyard Co., Inc.,* (E.D.La., 1961) 196 F.Supp. 826.

We are persuaded by the reasoning of those cases imposing liability on the parking lot operator. Although there was evidence in the record that Cecil was aware the lot closed at 6:00 P.M., she could also reasonably believe that because of the course of conduct between System and herself, and the fact the payment for parking was accepted in advance, that the closing time on the ticket was not considered to be a limitation on the bailment. Further, we opine such a determination (the conditions of the bailment and the extent of the bailment contract) to be a question of fact for the trier of fact, which we will not disturb on appeal where there is sufficient evidence to support that verdict. *See Rees v. Heyser,* (1980) Ind.App., 404 N.E.2d 1183. Therefore, although the evidence is conflicting, a review of the record reveals sufficient evidence to sustain the trial court's decision that the bailment continued past 6:00 P.M. Consequently, the decision below was not contrary to the evidence or contrary to Indiana law.

Lastly, we must decide whether the value of the rental car that American paid on behalf of its insured was properly included in the damage award. System argues that the law only allows reimbursement for loss of use of a commercial vehicle undergoing repairs or totally destroyed, and not for a pleasure vehicle, citing *New York Central Railroad Co. v. Churchill,* (1966) 140 Ind. App. 426, 218 N.E.2d 372. That case pro-

vides no support for System's position, as it did not deal with a bailment situation, but rather concerned a collision between a train and Churchill's tractor–trailer. We believe the proper measure of damages was that set forth in *Jerry Alderman Ford Sales, Inc. v. Bailey,* (1972) 154 Ind.App. 632, 291 N.E.2d 92 (modified on appeal 154 Ind.App. 632; 294 N.E.2d 617), wherein the court determined that the plaintiff should recover for all the natural, direct and proximate consequences of the defendant's acts and omissions. *See also Nolan v. Auto Transporters,* (1979) 226 Kan. 176, 597 P.2d 614; *cf. Insurance Company of North America v. Solari Parking, Inc.,* (1979) La., 370 So.2d 503. Therefore, the trial court properly considered the rental value of a substitute vehicle in making its determination as to the measure of damages.

Finding no error in the proceedings below, the trial court is in all matters affirmed.

Judgment affirmed.

NEAL and RATLIFF, JJ., concur.