John R. CARR, Jr., Plaintiff-Appellant and Cross-Appellee,

v.

HOOSIER PHOTO SUPPLIES, INC., Eastman Kodak Company, Defendants-Appellees and Cross-Appellants.

No. 1182S426.

Supreme Court of Indiana.

Nov. 12, 1982.

A. David Meyer, Buschmann, Carr & Schabel, Indianapolis, for plaintiff-appellant and cross-appellee.

R. Stanley Lawton, William L. Skees, Jr., W.C. Blanton, Ice, Miller, Donadio & Ryan, Indianapolis, for defendants-appellees and cross-appellants.

GIVAN, Chief Justice.

Litigation in this cause began with the filing of a complaint in Marion Municipal Court by John R. Carr, Jr. (hereinafter "Carr"), seeking damages in the amount of $10,000 from defendants Hoosier Photo Supplies, Inc. (hereinafter "Hoosier") and Eastman Kodak Company (hereinafter "Kodak").

Carr was the beneficiary of a judgment in the amount of $1,013.60. Both sides appealed.

The Court of Appeals affirmed the trial court in its entirety.

Kodak and Hoosier now petition to transfer this cause to this Court. We hereby grant that petition and vacate the opinion of the Court of Appeals. For reasons we shall set out below, we remand the cause to the trial court with instructions to enter a judgment in favor of Carr in the amount of $13.60 plus interest. Each party is to bear its own costs.

The facts were established by stipulation agreement between the parties and thus are not in dispute. In the late spring or early summer of 1970, Carr purchased some Kodak film from a retailer not a party to this action, including four rolls of Kodak Ektachrome-X 135 slide film that are the subject matter of this dispute. During the month of August, 1970, Carr and his family vacationed in Europe. Using his own camera Carr took a great many photographs of the sites they saw, using among others the four rolls of film referred to earlier. Upon their return to the United States, Carr took a total of eighteen [18] rolls of exposed film to Hoosier to be developed. Only fourteen [14] of the rolls were returned to Carr after processing. All efforts to find the missing rolls or the pictures developed from them were unsuccessful. Litigation commenced when the parties were unable to negotiate a settlement.

The film Carr purchased, manufactured by Kodak, is distributed in boxes on which there is printed the following legend:

### "READ THIS NOTICE"

"This film will be replaced if defective in manufacture, labeling, or packaging, or if damaged or lost by us or any subsidiary company even though by negligence or other fault. Except for such replacement, the sale, processing, or other handling of this film for any purpose is without other warranty of liability."

In the stipulation of facts it was agreed though Carr never read this notice on the packages of film he bought, he knew there was printed on such packages "a limitation of liability similar or identical to the Eastman Kodak limitation of liability." The source of Carr's knowledge was agreed to be his years of experience as an attorney and as an amateur photographer.

When Carr took all eighteen [18] rolls of exposed film to Hoosier for processing, he was given a receipt for each roll. Each receipt contained the following language printed on the back side:

"Although film price does not include processing by Kodak, the return of any film or print to us for processing or any other purpose, will constitute an agreement by you that if any such film or print is damaged or lost by us or any subsidiary company, even though by negligence or other fault, it will be replaced with an equivalent amount of Kodak film and processing and, except for such replacement, the handling of such film or prints by us for any purpose is without other warranty or liability."

Again, it was agreed though Carr did not read this notice he was aware Hoosier "[gave] to their customers at the time of accepting film for processing, receipts on which there are printed limitations of liability similar or identical to the limitation of liability printed on each receipt received by Carr from Hoosier Photo."

It was stipulated upon receipt of the eighteen [18] rolls of exposed film only fourteen [14] were returned to Hoosier by Kodak after processing. Finally, it was stipulated the four rolls of film were lost by either Hoosier or Kodak.

Kodak and Hoosier petition to transfer this cause to this Court. They allege the Court of Appeals erred when it decided two new questions of law. These errors are alleged to be: (1) that Hoosier's limitation of liability as a bailee for its own negligence, as reflected on the receipts given to Carr, was ineffective; and (2) that Kodak's limitation for its own negligence, as reflected on the boxes of film sold to Carr,

was ineffective. With regard to this last alleged error Kodak contends, *inter alia,* the relevant portions of the Uniform Commercial Code are not properly applied to determine the effectiveness of such a limitation.

█ It is apparent upon examination of the Findings of Fact and Conclusions of Law made by the trial court that court believed this entire transaction was governed by the law of bailments and not by the Uniform Commercial Code as codified in I.C. § 26–1–1–101 *et seq.* [Burns 1974]. We agree with the trial court in this conclusion.

At the time Carr purchased the film in question the sale contract was completed. The box in which the film was packaged contained an offer by Kodak to enter into a bailment contract to process the film. *See, Vigo Agricultural Society v. Brumfiel,* (1885) 102 Ind. 146, 1 N.E. 382; 17 Am. Jur.2d *Contracts* § 34 (1964). This offer of bailment was accepted by Carr when he turned the film over to Hoosier and Kodak for processing. *Herald Telephone v. Fatouros,* (1982) Ind., 431 N.E.2d 171; 17 Am. Jur.2d *Contracts* § 45 (1964).

We thus find the breach of contract occurring in the case at bar was a breach of a contract for bailment between the parties. In 8 Am.Jur.2d *Bailments* § 34 (1980), it is stated:

"Where property in an unmanufactured state is delivered by one person to another, on an agreement that it shall be manufactured or *converted in form,* or there is a delivery of chattels under an agreement that the party receiving them shall improve them by his labor or skill, whether the transaction is a sale or a bailment depends generally on *whether the product of the identical articles delivered is to be returned to the original owner, though in a new form. If it is to be so returned, it is a bailment . . . .* The intention of the parties is the controlling factor . . . ." (Emphasis added.) *Id.* at 769–70.

That either Kodak or Hoosier breached the bailment contract, by negligently losing the four rolls of film, was established in the stipulated agreement of facts. Therefore, the next issue raised is whether either or both, Hoosier or Kodak, may limit their liability as reflected on the film packages and receipts.

█ With regard to the limitation on the back of Hoosier's receipts, we are unable to agree with the position of Carr and the Court of Appeals that there is such an ambiguity in the wording of that clause that it is impossible to determine to whom it applies.

Again we call attention to the limitation of liability that appears on the back of the receipts from Hoosier:

"Although film price does not include any processing by Kodak, the *return* of any film *to us* . . . will constitute an agreement by you that if any such film is . . . lost *by us* . . . even though by negligence . . . it will be replaced with an equivalent amount of unexposed Kodak film and processing and, except for such replacement, the handling of such film or print *by us* . . . is without other warranty or liability." (Emphasis added.)

The argument as to the construction of this language centers around the words "return" and "us" as they appear on the receipts. Carr contends the term "return" is unambiguous and only means the return of an item to a party that at some time in the past had possession of the item and is now reacquiring possession. Since the facts clearly show Hoosier never possessed the four rolls of film before Carr brought them in for development, this term cannot be used to insulate Hoosier from liability. Hoosier argues the word "return" as used here can reasonably be construed to mean "delivery," which does not require a prior possession by the receiving party.

On the one hand it is apparent to us that Carr is correct in his interpretation of the word "return" and that it is, in fact, unambiguous. However, such a determination does not resolve the dispute in Carr's favor, in that the receipt actually is a receipt for the Kodak Company. The language of the receipt refers to Kodak. The word Kodak is on the front of the receipt as well as

twice in the body of the receipt itself as above quoted. Even though this is a receipt which was presented by Hoosier to Carr it obviously was speaking to the interests of Kodak. Hoosier's participation was as an agent for Kodak in this regard. 3 Am. Jur.2d *Agency* § 19 (1962). Therefore, as we read the receipt, the word "return" refers to the returning of film manufactured by Kodak to Kodak for processing. The word "us" refers to Kodak. We, therefore, hold the receipt issued by Hoosier primarily refers to Kodak and includes Hoosier to the extent of their participation on behalf of Kodak.

We next turn to a consideration of whether Kodak may be insulated from liability for its negligence in losing the four rolls of film by virtue of its limitation of liability printed on the film packages or on the receipt issued by Hoosier.

At the time Carr purchased the film, the box contained an offer by Kodak to process the film under the stated conditions. At that time no contract existed between Carr and Kodak. *Brumfiel, supra;* 17 Am.Jur.2d *Contracts* § 34 (1964). When Carr submitted the film for processing, he in effect accepted the terms and conditions of Kodak's offer. *Herald Telephone, supra;* 17 Am.Jur.2d *Contracts* § 45 (1964).

We view the receipt issued by Hoosier as a reiteration of the offer by Kodak and a memorialization of the acceptance of the contract by the person submitting the film for processing. Hoosier was acting as the agent for Kodak in this regard. 3 Am. Jur.2d *Agency* § 19 (1962).

The parties in this case cite us to two Indiana cases on the subject of the validity of contract terms purporting to limit one party's liability to another in the event of the former's breach of the contract by a negligent act.

In *General Grain, Inc. v. International Harvester,* (1968) 142 Ind.App. 12, 232 N.E.2d 616, the Court of Appeals held the exculpatory clause of a bailment contract between a garage owner and a customer was invalid. Likewise, in *Weaver v. American Oil Co.,* (1971) 257 Ind. 458, 276 N.E.2d 144, this Court held a similar exculpatory clause of a lease was invalid and could not be enforced against Weaver.

However, a close reading of these cases shows neither may be read so broadly as to stand for the proposition all limitation of liability clauses in contracts are void as a matter of law. In *General Grain, supra,* the Court of Appeals acknowledged though the parties are free to negotiate and include terms in a contract as they see fit, some kinds of terms, including terms limiting one's liability for breach of the contract, may be voided as being contrary to public policy. The Court of Appeals observed a professional bailee is not permitted to enforce a limitation of his liability due to his negligence in losing or damaging bailed goods merely by posting a notice of such limitation or printing it on a receipt or claim check. The Court then continued:

"A notice or statement of terms, such as the one here in issue, is at most only a proposal. It does not bind a bailor delivering property to a bailee *unless the former assents to the terms proposed.* In this case there was no assent.

\* \* \* \* \* \*

"*The rule gains in force where (as the trial court found) the appellant did not have any knowledge of the disclaimer of liability.*" (Emphasis added.) *General Grain, supra,* 142 Ind.App. at 17, 232 N.E.2d at 619.

It must be pointed out in the *General Grain* case the trial court found the bailor whose remedy was limited by the exculpatory clause was not aware of the exculpatory language in the bailment contract.

In *Weaver, supra,* this Court held an exculpatory clause in a lease limiting American Oil's liability to Weaver, the lessee, for damages caused by American Oil's negligent acts was unconscionable and hence void. We pointed out in that case the facts showed Weaver had only a year and a half of high school education, that he "was not one who should be expected to know the law or understand the meaning of technical terms," and "the evidence showed Weaver

had never read the lease prior to signing and that the clauses in the lease were never explained to him in a manner from which he could grasp their legal significance." *Weaver, supra,* 257 Ind. at 460–61, 276 N.E.2d at 146.

We summarized our view in *Weaver, supra,* in the following language:

"When a party can show that the contract, which is sought to be enforced, was in fact an unconscionable one, *due to a prodigious amount of bargaining power on behalf of the stronger party* [emphasis added], which is used to the stronger party's advantage and unknown to the lesser party, causing a great hardship and risk on the lesser party, the contract provision, or the contract as a whole, if the provision is not separable, should not be enforceable on the grounds that the provision is contrary to public policy. The party seeking to enforce such a contract has the burden of showing that the provision was explained to the other party and *came to his knowledge* and there was in fact *a real and voluntary meeting of the minds and not merely an objective meeting* [emphasis in original]." *Id.* at 464, 276 N.E.2d at 148.

■ The language quoted above, and the facts of the *Weaver* case, show a prerequisite to finding a limitation of liability clause in a contract unconscionable and therefore void is a showing of disparity in bargaining power in favor of the party whose liability is thus limited. The Court of Appeals in the *General Grain* case did not make this as clear as it might have in the opinion. However, that case was decided before *Weaver, supra.*

■ In the case at bar the stipulated facts foreclose a finding of disparate bargaining power between the parties or lack of knowledge or understanding of the liability clause by Carr. The facts show Carr is an experienced attorney who practices in the field of business law. He is hardly in a position comparable to that of the plaintiff in *Weaver, supra.* Moreover, it was stipulated he was aware of the limitation of liability on both the film packages and the receipts. We believe these crucial facts belie a finding of disparate bargaining power working to Carr's disadvantage.

Contrary to Carr's assertions, he was not in a "take it or leave it position" in that he had no choice but to accept the limitation of liability terms of the contract. As cross-appellants Hoosier and Kodak correctly point out, Carr and other photographers like him do have some choice in the matter of film processing. They can, for one, undertake to develop their film themselves. They can also go to independent film laboratories not a part of the Kodak Company. We do not see the availability of processing as limited to Kodak.

Nor can we agree with Carr's contention, focusing on the language in both the *General Grain* and *Weaver* cases on the necessity of assent to such a term. Carr contends "knowledge" or "notice" do not constitute "assent." However, where, as here, a knowledgeable party, aware that such terms are part of the proposed contract, enters into the contract without indicating any non-acquiescence to those terms, we must assume he has assented to those terms. American Jurisprudence speaks to the necessity of showing assent in these words:

"There must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract. However, ordinarily no more is meant by this than that an expression or manifestation of mutual assent, as an objective thing, is necessary . . . . For a contract to be binding, the parties must have a distinct and common intention which is to be applied, however, in determining whether the parties possessed the necessary intention to contract. This means that the manifestation of a party's intention, rather than the actual or real intention, is ordinarily controlling . . . .

\* \* \* \* \* \*

"The entry of the parties into a contractual relationship must be manifested by some intelligible conduct, act, or design. Assent in the sense of the law is a matter

of overt acts and expressions ...." 17 Am.Jur.2d *Contracts* §§ 18, 19 (1964), at 354–55.

In the case at bar, Carr's act of bringing the film to Hoosier and Kodak for processing, coupled with the awareness and understanding of the effect of the limitation of liability clause in the contracts, constitutes a manifestation of assent to those terms.

We hold the limitation of liability clauses operating in favor of Hoosier and Kodak were assented to by Carr; they were not unconscionable or void. Carr is, therefore, bound by such terms and is limited in his remedy to recovery of the cost of four boxes of unexposed Kodak Ektachrome-X 135 slide film.

The Court of Appeals' opinion in this case is hereby vacated. The cause is remanded to the trial court with instructions to enter a judgment in favor of appellant, John R. Carr, Jr., in the amount of $13.60, plus interest. Each party is to bear its own costs.

HUNTER and PIVARNIK, JJ., concur.

PRENTICE, J., concurs in result without opinion.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

According to the agreed facts, we are confronted with two limitation of liability statements. One appears in print on the side of a small box containing a roll of Kodak film, and the other appears on the reverse side of a receipt and claim check measuring one inch by two inches. Each purports to limit liability for damage or loss of film during processing due to "negligence or other fault." With regard to the limiting statements on the box it was stipulated as follows:

"13. At the time that Carr purchased the film, he did not read the foregoing notice, but Carr by reason of both his experience as an attorney and his experience as an amateur photographer for over 12 years knew that all Eastman Ko-

dak film and all film of other manufacturers is sold in packages on which there is printed a limitation of liability similar or identical to the Eastman Kodak limitation of liability."

With regard to the limitation on the processing claim check it was stipulated as follows:

"22. Carr did not read the reverse side of any of the receipts and Hoosier Photo did not call the words imprinted thereon to his attention or otherwise discuss the matters referred to thereon with Carr. Carr first became aware of such specific language subsequent to the time he filed this civil action, although Carr knew that Hoosier Photo, Eastman Kodak, and all other processors of film to Carr's knowledge give to their customers at the time of accepting film for processing, receipts on which there are printed limitations of liability printed on each receipt received by Carr from Hoosier Photo."

The trial court found that these limitation of liability statements were not binding on plaintiff Carr. In so doing he stated:

"5. A professional bailee may not limit his liability by a mere notice posted on his premises or printed on a receipt, claim check, or work order. The printing on Eastman Kodak's film packages and the printing on the receipts which the plaintiff received from Hoosier Photo are mere notices.

6. It cannot be presumed that plaintiff in delivering his film for processing intended to waive his legal rights; the presumption being quite as strong plaintiff intended to insist upon them. A notice or statement of terms, such as the ones here in this case, is at most only a proposal. Such a notice or statement of terms does not bind a bailor delivering property to a bailee unless the former assents to the terms proposed. Here there was no evidence of any such assent."

As a general rule the law does not permit professional bailees to escape or diminish liability for their own negligence by posting signs or handing out receipts. *General*

*Grain, Inc. v. International Harvester Co.,* (1968) 142 Ind.App. 12, 232 N.E.2d 616; *Keenan Hotel Co. v. Funk,* (1931) 93 Ind. App. 677, 177 N.E. 364. The statements on the film box and claim check used by Kodak and Hoosier Photo are in all respects like the printed forms of similar import which commonly appear on packages, signs, chits, tickets, tokens and receipts with which we are all bombarded daily. No one does, or can reasonably be expected, to take the time to carefully read the front, back, and sides of such things. We all know their gist anyway.

The distinguished trial judge below characterizes these statements before us as "mere notices" and concludes that plaintiff below did not "assent" to them so as to render them a binding part of the bailment contract. Implicit here is the recognition of the exception to the general rule regarding such notices, namely, that they may attain the dignity of a special contract limiting liability where the bailor overtly assents to their terms. *General Grain, Inc. v. International Harvester, Co., supra.* To assent to provisions of this sort requires more than simply placing the goods into the hands of the bailee and taking back a receipt or claim check. Such acts are as probative of ignorance as they are of knowledge. However, according to the agreed statement of facts, plaintiff Carr "knew" by past experience that the claim checks carried the limitation of liability statements, but he did not read them and was unaware of the specific language in them. There is nothing in this agreed statement that Carr recalled this knowledge to present consciousness at the time of these transactions. Obviously we all know many things which we do not recall or remember at any given time. The assent required by law is more than this; it is, I believe to perform an act of understanding. There is no evidence of that here.

The evidence presented tending to support the award of damages included an actual uncontroverted amount of $13.60 thereby precluding mere nominal damages. There was further evidence that 150 exposures were lost. The actual award of $1,014.60 amounted to between $6.00 and $7.00 per picture. Carr provided evidence that the pictures were of exceptional value to him, having been taken in a once-in-a-lifetime European trip costing $6000, including visits arranged there before hand with relatives. The award was fair and and just compensation for the loss of value to the owner and does not include sentimental or fanciful value.

The trial court judgment should be affirmed.